# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

|  |  |  |
|---|---|---|
| **ELECTRONIC FRONTIER FOUNDATION**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:10-CV-00641 (RBW) |
| | ) | |
| **DEPARTMENT OF JUSTICE**, | ) | |
| | ) | |
| Defendant. | ) | |

---

## PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Electronic Frontier Foundation ("EFF") cross-moves for partial summary judgment with respect to defendant's continued withholding of records concerning defendant's involvement in the High Level Contact Group. These records have been unlawfully withheld, in full and in part, from agency responses to EFF's Freedom of Information Act request. EFF respectfully refers the Court to the accompanying memorandum of points and authorities in support of this cross-motion.

Respectfully submitted,

*/s/ David L. Sobel*

DAVID L. SOBEL
D.C. Bar No. 360418
Electronic Frontier Foundation
1818 N Street, N.W., Suite 410
Washington, DC 20036
(202) 797-9009

MARK RUMOLD (Admitted in New York)
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA 94110
(415) 436-9333

Counsel for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                     )

**ELECTRONIC FRONTIER FOUNDATION**,   )
                                     )

          Plaintiff,              )

v.                                 )     C.A. No. 10-CV-0641 (RBW)

**DEPARTMENT OF JUSTICE**,         )

          Defendant.        )
_____)

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Electronic Frontier Foundation ("EFF") brought this case under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking disclosure of agency records maintained by the Department of Justice ("DOJ") concerning the agency's involvement in the High Level Contact Group ("HLCG") — a collaboration between European Union ("EU") and United States government officials to initiate a framework for the international sharing of citizens' personal information for use by law enforcement officials.  Complaint for Injunctive Relief ("Compl.") (Dkt. No. 1), ¶ 1.  On June 15, 2011, DOJ moved for summary judgment (Dkt. No. 20), asserting that the agency has conducted a reasonable search for responsive records; has properly withheld responsive records, both in full and in part, pursuant to FOIA Exemptions 2, 5, and 6; and has released all reasonably segregable material.  EFF does not contest the adequacy of DOJ's search, nor the withholding of information under Exemptions 2 and 6.

Rather, EFF opposes defendant's motion for partial summary judgment on three grounds: first, DOJ has failed to satisfy its procedural burden to provide plaintiff and this Court with

sufficient information to assess the propriety of the agency's withholdings; second, DOJ has improperly asserted Exemption 5 to withhold documents; and, third, DOJ has failed to satisfy its obligation of demonstrating that all reasonably segregable, non-exempt material has been released.  For these reasons, described more fully below, the agency is not entitled to partial summary judgment, and EFF cross-moves for partial summary judgment on the same grounds.

## FACTUAL BACKGROUND

Created at a November 6, 2006 Justice and Homeland Affairs Ministerial ("JHA"), the HLCG was a joint undertaking between EU and US government officials to address the issue of transnational data-sharing for law enforcement purposes.  Compl. ¶ 5.  Beyond the fact of the group's existence, little is publicly known about the three years of meetings and deliberations leading up to the HLCG's final agreement on data-sharing principles.  *See* Ian Traynor, *New Pact Would Give EU Citizens' Data to US*, GUARDIAN (UK), Jun. 30, 2008 (quoting a European politician stating, "[The deliberations and issues addressed by the HLCG] are about fundamental rights.  But it has all been done in secret by civil servants behind closed doors.");[1] Council of the European Union, *Reports by the High Level Contact Group on Information Sharing and Privacy and Personal Data Protection* (Nov. 23, 2009) ("EU Report") (filed herewith as Exhibit 1).

In an effort to shed light on the workings of the HLCG, EFF submitted a FOIA request to DOJ in November 2009.  EFF's request sought "all DOJ records created since January 20, 2009, that concern, discuss or reflect the work or deliberations of the HLCG."[2]  In April 2010 — five

---

[1]  *Available at* http://www.guardian.co.uk/world/2008/jun/30/eu.privacy

[2]  Defendant claims to have not received plaintiff's FOIA request until January 15, 2010.  *See* Declaration of Vanessa R. Brinkman ("Brinkman Decl.") at ¶ 3 n. 1. (Dkt. 20).  By agreement with counsel, EFF narrowed the scope of its request to records created between January 20, 2009 and November 6, 2009.  Brinkman Decl. at ¶ 16.

months after originally submitting its FOIA request, and after DOJ's failure to produce any responsive records — EFF initiated this action.  Compl. ¶¶ 1, 11. (Dkt. 1).

Following the commencement of this litigation, DOJ began its production of responsive records.  Defendant's Memorandum of Points and Authorities in Support of Its Motion for Partial Summary Judgment ("Def. Mem.") at 4-7, 9-11.  To date, DOJ's Office of Information Policy ("OIP") has released to EFF six pages in full, 97 pages with redactions (primarily under Exemption 5), and has withheld 140 pages in full under Exemption 5.  *See* Def. Mem. at 4-7.  DOJ's Criminal Division ("CRM") has released 410 pages in full, 166 pages with redactions (again, primarily under Exemption 5), and has withheld 361 pages in full under Exemption 5.  Def. Mem. at 9-11.  Over one thousand pages of responsive records located by both OIP and CRM have been referred to the Department of State, Department of Homeland Security, and Department of Commerce for processing.  Def. Mem. at 6, 9.  None of those records have been released to EFF.

Defendant DOJ has moved for partial summary judgment with respect to the records processed by OIP and CRM, asserting that it has conducted a reasonable search for responsive records and that all responsive records have either been released or have been properly withheld, in whole or part, pursuant to Exemption 5.  For the reasons set forth below, EFF opposes DOJ's motion and cross-moves for partial summary judgment.

## ARGUMENT

The Freedom of Information Act safeguards American citizens' right to know "what their Government is up to."  *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989).  The central purpose of the statute is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214,

242 (1978). "[D]isclosure, not secrecy, is the dominant objective of [FOIA]." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).

The statute requires disclosure of agency records when requested by the public unless the records fall within one of nine exemptions. *See* 5 U.S.C. § 552(b)(1) - (9). If requested information does not fit squarely into one of these enumerated categories, the law requires federal agencies to disclose the information. *NLRB v. Robbins,* 437 U.S. at 221 (1978). FOIA's exemptions "have been consistently given a narrow compass," and requested agency records that "do not fall within one of the exemptions are improperly withheld[.]" *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) (internal quotation marks omitted).

Disputes involving the propriety of agency withholdings are commonly resolved at the summary judgment stage in FOIA cases. *Harrison v. EOUSA*, 377 F. Supp. 2d 141, 145 (D.D.C. 2005). In FOIA cases, the Court reviews the government's withholding of agency records *de novo*, and the government bears the burden of proving that particular information falls within one of the nine narrow exemptions to FOIA's broad mandate of disclosure. 5 U.S.C. § 552(a)(4)(B); *Reporters Comm.*, 489 U.S. at 755. "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action.'" *Id.* (quoting 5 U.S.C. § 552(a)(4)(B)).

"A party is entitled to summary judgment if the [record] demonstrate[s] that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law." *Goodrich v. Teets*, 510 F. Supp. 2d 130 (D.D.C. 2007); *see also* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). In FOIA cases, to be entitled to summary judgment, an agency must prove that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and quotation omitted). When claiming one of FOIA's exemptions, the agency bears the burden of providing a "'relatively detailed justification' for assertion of an exemption, and must demonstrate to a reviewing court that records are *clearly* exempt." *Birch v. United States Postal*

4

*Service,* 803 F.2d 1206, 1209 (D.C. Cir. 1986) (emphasis added) (citing *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977).

Here, DOJ is not entitled to summary judgment for three reasons.  First, the agency has failed to satisfy its procedural burden of providing plaintiff and this Court with the necessary specificity and contextual information to assess the propriety of the challenged withholdings.  Next, DOJ has improperly withheld records under Exemption 5 containing information that 1) was shared with third parties; 2) for which the deliberative process privilege has been waived; 3) is not predecisional and deliberative; and 4) is purely factual in nature.  Finally, DOJ has failed to demonstrate compliance with FOIA's requirement that all reasonably segregable, non-exempt material be released.

## I.   DOJ has Failed to Satisfy the Procedural Requirements Necessary to Sustain its Burden Under the FOIA

In *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973), the D.C. Circuit established the "'procedural requirements' that an agency seeking to avoid disclosure" must follow in order to carry its burden.  *Vaughn* requires that "when an agency seeks to withhold information it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply."  *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977) (citing *Vaughn*, 484 F.2d at 826-28) (other citations omitted).  In order to permit adversarial testing of claimed exemptions, agencies generally submit these "detailed justifications" in the form of a "*Vaughn* index" and accompanying affidavits.[3]  Here, while DOJ has proffered two *Vaughn* indices and two supporting affidavits to support its claims under

---

[3]  The *Vaughn* requirements are typically satisfied through an agency's submission of an affidavit describing the basis for its withholdings, accompanied by an index listing responsive records and indicating the precise redactions made to the records.  We refer to the affidavit and index collectively herein as "*Vaughn* submissions."

Exemption 5, these *Vaughn* submissions utterly fail to provide EFF and the Court with the

necessary specificity and context with which to adequately test the agency's claims of

exemption.

### A.  DOJ's *Vaughn* Submissions Fail to Provide the Requisite Specificity

In *King v. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987), the D.C. Circuit reviewed

the case law applying *Vaughn*, emphasizing that:

> [s]pecificity is the defining requirement of the *Vaughn* index and affidavit;
> affidavits cannot support summary judgment if they are "conclusory, merely
> reciting statutory standards, or if they are too vague or sweeping."  To accept an
> inadequately supported exemption claim "would constitute an abandonment of the
> trial court's obligation under the FOIA to conduct a *de novo* review."

(footnotes omitted).  *See also Morely v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (noting that

"[t]he court has provided repeated instruction on the specificity required of a *Vaughn* index").

As the court concluded in *King*, "[c]ategorical description of redacted material coupled with

categorical indication of anticipated consequences of disclosure is clearly inadequate."  *King*,

830 F.2d at 224 (footnote omitted); *see also Ctr. For Medicare Advocacy, Inc. v. Dep't of Health

and Human Serv.*, 577 F. Supp. 2d 221, 238 (D.D.C. 2008) (*Vaughn* submission "'must be

sufficiently detailed' so as to permit the FOIA requester and the court to review the applicability

of the claimed FOIA exemptions on a document by document basis.").  Moreover, as this Court

noted in *Judicial Watch v. USPS*, 297 F. Supp. 2d 252, 257 (D.D.C. 2004), while an agency's

*Vaughn* submissions need not always provide a document-by-document analysis of its

withholdings, "as a purely practical matter, document-by-document justification will usually be

necessary."  *See also*, *King*, 830 F.2d at 223 ("A withholding agency must describe *each*

document or portion thereof withheld, and for *each* withholding it must discuss the consequences

of disclosing the sought-after information.") (emphasis in original).

Here, DOJ has proffered classic examples of the kind of "vague [and] sweeping," categorical *Vaughn* submissions that the D.C. Circuit has long rejected. To account for 237 pages of withheld material, OIP has divided its *Vaughn* index into "nine sub-groups." OIP *Vaughn* Index ("OIP *Vaughn*") at 1. (Dkt. 20). Consequently, some sub-groups describe large swaths of withheld information under a single, nonspecific description. Sub-group 1(c), for example, sweeps in 52 individual documents, created over the course of nine months, beneath one categorical description. *See* OIP *Vaughn* at 3. Other parts of OIP's *Vaughn* index are similarly expansive — Section 1(d) provides one categorical description for 30 individual documents created over the course of two months; Section 2(a)'s single description reaches 22 documents constituting 60 pages of material withheld in full. OIP *Vaughn* at 4, 6.

CRM's *Vaughn* index suffers from similar shortcomings. In accounting for 527 pages of material withheld in full or in part, CRM divided its index into nine categories that, like OIP's *Vaughn* index, sweep large numbers of apparently disparate documents within single, categorical descriptions: Category A, for example, contains at least 46 distinct "documents,"[4] written over the course of nearly 10 months, created for eight separate meetings, and constituting approximately 263 pages of material. CRM *Vaughn* Index ("CRM *Vaughn*") at 1. (Dkt. 20). Categories C and E are similarly sweeping. *See* CRM *Vaughn* at 2.

---

[4] Further confusing defendant's *Vaughn* submission, unlike OIP's, CRM's *Vaughn* does not provide discrete descriptions of the number of documents and the number of pages withheld pursuant to each categorical description. Thus, description of the records withheld according to CRM's categorical system as "documents" may be misleading. Instead, CRM appears to have sequentially numbered *all* responsive documents located by CRM and simply provided page ranges for documents falling within each "category." This method fails to provide any explanation for the number of distinct "documents" that might be included within each page range.

Most fundamentally, however, is the failure of both components' *Vaughn* submissions to provide any meaningful information on the nature of the documents withheld in their entirety from plaintiff.  In some circumstances, when paired with its categorical *Vaughn* description, it is possible to make an educated guess about the content of material withheld in *part*; however, when material is withheld in *full* and described using a vague, categorical *Vaughn* index, it is simply impossible to make an informed judgment about the nature of the material being withheld.  For example, records designated as CRM-000019 to CRM-000024 have been withheld in full.[5]  According to CRM's *Vaughn* index, these records fall within Category C, which signifies that the six pages must be either, first, "drafts/working versions," second, "suggested language for and edits to those drafts," or, third, "discussions about those drafts" related to one of four HLCG documents — either "*Enhancing transatlantic cooperation in the area of justice, freedom and security,*" "*Addendum to the Final Report by EU-US High Level Contact Group on information sharing and privacy and personal data protection,*" the "*Stockholm Programme,*" or the "HLCG for Ministerial Troika."  CRM *Vaughn* at 2.  Even assuming that the six withheld pages are all the same "type" of document, CRM's *Vaughn* index suggests twelve separate possibilities for the documents' contents.  Without question, this ambiguity cannot satisfy the specificity required of DOJ's *Vaughn* submissions.

Given these shortcomings, it is impossible for both plaintiff and this Court to assess the propriety of DOJ's withholdings.  Because the agency's *Vaughn* submissions are "wholly lacking in that specificity . . . [the D.C. Circuit has] repeatedly warned is necessary to ensure

---

[5] Unlike OIP, CRM did not distinguish in its *Vaughn* index between documents withheld in full and documents released in part.  In the documents released to plaintiff by CRM, there was a gap in numbering between CRM-000019 and CRM-00047. In the absence of some other justification, plaintiff can only assume that this gap stems from the documents' full withholding under Exemption 5.  This, however, only underscores the insufficiency of CRM's *Vaughn* index.

meaningful review of an agency's claim to withhold information," *King*, 830 F.2d at 223

(footnote omitted), defendant's motion for partial summary judgment should be denied on this

basis alone.

### B. DOJ's *Vaughn* Submissions Fail to Provide the Contextual Specificity Necessary to Support the Withholding of Records Under the Deliberative Process Privilege of Exemption 5

While DOJ has failed to satisfy the general requirement of specificity in its *Vaughn*

submissions, in cases involving the deliberative process privilege of Exemption 5,[6] as this Court

has noted, the need for specificity is particularly acute. *See Judicial Watch*, 297 F. Supp. 2d at

257. Indeed, the "first step" in determining whether a document is properly withheld as

deliberative under Exemption 5 "is to examine the context in which the materials are used."

*Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429 (D.C. Cir. 1992) (internal

quotations omitted) (citing *Wolfe v. Dep't of Health and Human Servs.*, 839 F.2d 768, 774 (D.C.

Cir. 1988)); *see also Formaldehyde Inst. v. Dep't of Health and Human Serv.*, 889 F.2d 1118,

11232 (D.C. Cir. 1989) (When examining an agency withholding under the deliberative process

privilege, "the pertinent element is the role, if any, that the document plays in the process of

agency deliberations.") (citation and internal quotation marks omitted). Thus, "[b]ecause the

applicability of the deliberative process privilege is dependent on *the content of each document*

*and the role it plays in the decisionmaking process*, an agency's affidavit describing the withheld

documents must be specific enough so that the elements of the privilege can be identified."

*Judicial Watch*, 297 F. Supp. 2d at 257 (emphasis added). "Without a sufficiently specific

affidavit or *Vaughn* Index, a court cannot decide, one way or the other, a deliberative process

privilege claim." *Id.  See also Cuban v. SEC*, 744 F. Supp. 2d 60, 77 (D.D.C. 2010) ("The Court

---

[6] Exemption 5 and the deliberative process privilege are discussed in more detail in Section II, *infra* at 13-21.

must be able to conclude that the defendant's position is the correct one to sustain the defendant's withholding of [] records [under Exemption 5], and summary judgment in the defendant's favor cannot be obtained on the defendant's bare contention that it has satisfied the legal standard.").

Due to the heightened contextual specificity necessary to support a withholding under the deliberative process privilege, the categorical descriptions provided in DOJ's *Vaughn* submissions fail to provide plaintiff and this Court with sufficient information to assess the validity of the agency's claims.  As a threshold matter, and setting aside DOJ's failure to provide contextual information for specific *documents*, the agency has failed to proffer sufficient contextual information about the HLCG and HLCG negotiations, generally — the very subject of plaintiff's FOIA request — to satisfy its burden.  Beyond superficial knowledge of the HLCG's existence and broad purpose, plaintiff has only limited information about the deliberations, workings, and specific issues addressed by the HLCG.  To illustrate, the agency has presented contradictory information concerning the current status of HLCG negotiations: CRM's declaration states at one point that "negotiations with the European Union on this issue continue," Declaration of Kristin L. Ellis ("Ellis Decl.") ¶ 23, yet later references "the *final agreement* on data protection principles reached by the HLCG, which was reached on October 28, 2009," *id.* ¶ 36 (emphasis added); *see also* EU Report (Exhibit 1, filed herewith) at 1 (November 2009 Council of the European Union report stating that "[t]he work of the HLCG has . . . been concluded." ).

While DOJ has failed to provide plaintiff and this Court with the general context of the HLCG's work and status, the agency has also failed to provide specific information about the context of particular records.  OIP's *Vaughn* submissions are particularly wanting: no contextual

information has been provided about the withheld documents and the role those documents

played in the agency decisionmaking process.  For example, according to OIP's *Vaughn* Index,

documents within Category 2(c) relate to "[b]riefing materials . . . for the Attorney General and

draft talking points/briefing papers for upcoming meetings with EU member state dignitaries."

OIP *Vaughn* at 6.  However, OIP's declaration provides no contextual information about the

documents' creation, and provides little more than generic justifications for their withholding:

> The drafters of these briefing papers and e-mails attempt to identify important
> issues and background and provide key talking points in a concise, summary
> format for ease of understanding and presentation.  In doing so, the authors distill
> pertinent information from underlying events as they attempt to anticipate
> questions and concerns that Senior Department leadership, including the Attorney
> General, may encounter about the issues at hand, to ensure that they are prepared
> to respond appropriately.

Brinkman Decl. ¶ 31.  There is no description of the "important issues" being briefed, the

"pertinent information" that was included, and the "underlying events" surrounding the creation

of the briefing materials — precisely the type of contextual information necessary to support

DOJ's withholding claims under Exemption 5.

Moreover, while CRM has provided *some* contextual information about the documents at

issue, "critical information" remains missing from CRM's *Vaughn* submissions, such as "the

documents' respective authors [and] recipients," *Citizens for Responsibility and Ethics in Wash.*

*v. DHS*, 648 F. Supp. 2d 152, 163 (D.D.C. 2009), as well as the "'function and significance of

the document(s) in the agency's decisionmaking process,' 'the nature of the decisionmaking

authority vested in the office or person issuing the disputed document(s),' and the positions in

the chain of command of the parties to the documents."  *Arthur Anderson & Co. v. IRS*, 679 F.2d

254, 258 (D.C. Cir. 1982) (internal citations omitted).  Beyond a categorical description of the

authors as "U.S. HLCG experts," no information is provided about the authors of the withheld

material.  *See* CRM *Vaughn* at 1-3.  Such a vague characterization of the documents' authors

necessarily prevents any understanding of the "decisionmaking authority vested" in the authors,

or their positions in the "chain of command."  *See id*.  The *Vaughn* submissions of both CRM

and OIP provide only scant information about the individuals participating in the HLCG process

and those authorized to negotiate and make decisions on behalf of the agency.

Indeed, because DOJ has failed to describe the specific context of HLCG negotiations,

and because the agency has chosen to describe withheld records in only the most categorical

manner, it is simply impossible to determine the role *any* particular document played in the

"decisionmaking process," let alone to discern the privileged content a particular document may

contain.  *Judicial Watch,* 297 F. Supp. 2d at 287.  Consequently, DOJ's *Vaughn* submissions

again fail to provide plaintiff and the Court with the requisite specificity to assess the agency's

withholding claims under Exemption 5.

## II.      DOJ Has Not Met Its Burden of Demonstrating that the Disputed Information Was Properly Withheld Under Exemption 5

Exemption 5 of FOIA provides a narrow exception for "inter-agency or intra-agency

memorandums or letters which would not be available by law to a party other than an agency in

litigation with the agency[.]"  5 U.S.C. § 552(b)(5).  The Supreme Court has interpreted

Exemption 5 to protect records from disclosure where the withheld material falls "within the

ambit of a privilege against discovery under judicial standards that would govern litigation

against the agency that holds it."  *Dep't of the Interior v. Klamath Water Users Protective Ass'n*,

532 U.S. 1, 8 (2001).  The first discovery privilege incorporated into Exemption 5, and the one

on which DOJ relies here,  protects records that reflect an agency's "deliberative process:" that

is, records that reflect the "opinions, recommendations and deliberations comprising part of a

process by which governmental policies are formulated."  *NLRB. v. Sears, Roebuck & Co.*, 421

U.S. 132, 150 (1975) (internal citations omitted).

For four distinct reasons, DOJ has failed to satisfy its burden of demonstrating the propriety of its withholdings under the deliberative process privilege of Exemption 5.  First, the agency has improperly withheld records that do not satisfy the threshold "inter-agency or intra-agency" requirement of Exemption 5 because the material was likely shared with third-parties outside of the agency.  Second, DOJ has likely withheld information for which the privilege has been waived.  Third, DOJ has failed to demonstrate that all withheld material is "predecisional" and "deliberative."  And, finally, the agency has likely withheld factual information, which is generally not exempt from disclosure under Exemption 5.

### A.  DOJ Has Withheld Documents that Are Not "Inter-agency" or "Intra-agency"

Exemption 5, by its own terms, applies only to records that are "inter-agency or intra-agency."  5 U.S.C. § 552(b)(5).  As the Supreme Court has noted, "[s]tatutory definitions underscore the apparent plainness of the text": "'agency' means 'each authority of the Government of the United States,' and 'includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government . . . or any independent regulatory agency." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 531 U.S. 1, 9 (2001) (quoting 5 U.S.C. §§ 551(1), 552(f)) (internal citations omitted).  "In general, this definition establishes that communications between agencies and outside parties are not protected under Exemption 5." *Ctr. for Int'l Envtl. Law v. Office of the U.S. Trade Rep.*, 237 F. Supp. 2d 17, 25 (D.D.C. 2002).  Thus, when a document is shared outside an agency — even in draft form — the document may

not be withheld under Exemption 5.[7]

In the responsive records released to EFF, many examples exist of records that were likely shared outside the agency with the government's EU counterparts but were not released to EFF. For example, the record numbered KMI-14 references a "short paper on a way forward for the HLCG, which is intended to result in completed principles being presented at the ministerial in late April." Exhibit 2 (filed herewith). The file-name of the "short paper" is "HLCG.way forward Jan23.doc."[8] *Id*. This document, in its final form, was likely shared with non-U.S. members of the HLCG group: indeed, an email included in the material released to EFF references the document's eventual release to EU officials. Exhibit 3 (filed herewith) (record numbered CRM-000189) ("Here is the [HLCG Way Forward] document as edited by DHS and DOS. We will have to clear with the delegation *providing it to the Czechs*.") (emphasis added). While CRM's declaration asserts that drafts of the document were "not distributed outside the Executive Branch," Ellis Decl. ¶ 56, a final version does not appear to have been included in any of the documents released to plaintiff.

By virtue of having been shared with DOJ's European counterparts, the document ceases to be an "inter-agency or intra-agency" memorandum, and thus loses its protection under Exemption 5. *See Ctr. for Envtl. Law*, 237 F. Supp. 2d at 26 (holding documents created by U.S. Trade Representative and disclosed to Chilean officials not eligible for withholding under Exemption 5). Despite being ineligible for withholding under Exemption 5, the document does

---

[7] DOJ pays lip-service to this fundamental principle, noting that "[t]he threshold requirement for application of Exemption 5 is that the information withheld must be 'inter-agency or intra-agency,' meaning, in essence, that it has not left the Executive Branch." Ellis Decl. ¶ 28.

[8] Whether, and to what extent, this document has been released to EFF is unclear. The email and attachment at issue were included in OIP's release to plaintiff; however, due to the generalized nature of OIP's *Vaughn* index, the specific document is not referenced. CRM's *Vaughn* also references the file, *see* CRM *Vaughn* at 2, however the document does not appear to have been included in the documents released by CRM to plaintiff.

not appear to have been included in any of the material released to EFF.  In light of the clear

indication that the document was shared outside the Executive branch, DOJ — at minimum — is

not entitled to summary judgment on the applicability of Exemption 5 to the "HLCG way

forward" document.

Multiple examples exist of documents that may have been withheld in full under

Exemption 5 yet apparently were shared with EU members of the HLCG during the course of

negotiations.  *See, e.g.*, Exhibit 4 (filed herewith) (record numbered CRM-000495) ("Sweden

discussion paperUS editsJune.26.doc"); Exhibit 5 (filed herewith) (record numbered KMI-10)

("HLCG troika conclusions.doc"); CRM *Vaughn* at 2 ("Comments on E.U.'s draft *Stockholm

Programme*"); Ellis Decl. ¶ 69 ("These drafts pre-dated both *the final version proposed by the

U.S. experts to the E.U. experts*, as well as the final language upon which both sides ultimately

agreed.") (emphasis added).  Nevertheless, given DOJ's categorical descriptions of documents,

EFF is unable to provide the Court with a definitive or comprehensive list of documents that

were likely shared with the agency's EU counterparts and are thus ineligible for withholding

under Exemption 5's "inter-agency or intra-agency" threshold.[9]  At minimum, however,

information within the released documents, coupled with the absence of final versions of these

documents within the records released to EFF, sufficiently contradicts the generic assertions

contained in DOJ's *Vaughn* submissions and precludes a grant of summary judgment to the

agency.

---

[9]  In marked contrast to the situation here, in *Ctr. for Envtl. Law*, the parties "agreed on the
identity of all documents [USTR] exchanged with Chile" and USTR submitted a "Report on
Documents Exchanged Between the United States and Chile."  237 F. Supp. 2d at 21.

**B.   Deliberative Process Protection Has Been Waived for Information
Contained within Documents Withheld Under Exemption 5**

While DOJ has failed to satisfy the threshold showing that many of the withheld

*documents* qualify as "inter-agency or intra-agency" memoranda under Exemption 5, the agency

has similarly failed to show that its claim of privilege to the *information* contained within many

of the records has not been waived.  In the context of Exemption 5, "voluntary disclosure of

privileged material . . . waives [the deliberative process] privilege[] for the document or

*information* specifically released."  *In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997)

(emphasis added; citations omitted).  Because whole documents can lose their protection under

Exemption 5 once they are shared outside the agency, "[i]t follows that any factual portions of

documents describing or summarizing such communications to or from [parties with which an

agency has shared documents] likewise are not protected."  *Ctr. for Envtl. Law*, 237 F. Supp. 2d

at 31.

Given the subject of plaintiff's FOIA request and the nature of bi-lateral negotiations in

general, it stands to reason that significant amounts of *information* contained within the records

withheld from EFF have been disclosed to DOJ's EU counterparts during the course of

negotiations.  While an interagency email discussing a possible issue in the HLCG negotiations

may not, itself, have been disclosed to EU members of the HLCG, it is extremely likely that the

substantive information contained within the email was disclosed to other members of the

HLCG.  For example, CRM's affidavit describes how materials withheld in Category H contain

"numerous conversations/exchanges via email" about "responses by the E.U. to ideas presented

by the United States."  Ellis Decl. ¶ 71.  Thus, to the extent documents within Category H

contain information about the "ideas presented" by U.S. officials to EU-members of the HLCG,

the deliberative process privilege for that information has been waived by disclosure and that

information must be released.  Further, Category I of CRM's *Vaughn* index covers "U.S. experts' discussions about and summaries of conversations, meetings, and documents/laws concerning data privacy."  CRM *Vaughn* at 3.  To the extent the summaries of conversations, meetings, and documents contain information that was disclosed to (or received from) third-parties during the course of negotiations, that information must be disclosed here, as well.

The circumstances present here, in which a substantial amount of the withheld information likely memorializes discussions and negotiations between U.S. and EU participants in the HLCG process, preclude Exemption 5 claims under longstanding D.C. Circuit precedent. In *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242 (D.C. Cir. 1977), the court of appeals firmly rejected an attempt to withhold a "running summary of the offers and counter-offers made by each side in the Air Force's negotiations" with West Publishing Company.

> The Air Force insists that this information is exempt simply because it reflects negotiating positions of the parties which predate the final agreement on the contract terms.  . . .  We find this to be an entirely too broad reading of exemption five.  Predecisional materials are not exempt merely because they are predecisional; they must also be a part of the deliberative process within a government agency.  . . .  Information about the "deliberative" or negotiating process outside an agency, between itself and an outside party, does not [fall within the exemption].  Moreover, neither of the policy objectives which exemption five is designed to serve — avoiding premature disclosure of agency decisions and encouraging the free exchange of ideas among administrative personnel — is relevant to a claim of secrecy for a proceeding between an agency and an outside party.  All of the information as to what the Air Force offered West Publishing, initially and in response to West's counter-offers, has already been fully disclosed to at least one party outside the Department — West itself — and the Department has no control over further disclosure.

*Id*. at 257-258.

For precisely the reason that the court articulated in *Mead Data*, Exemption 5 does not justify DOJ's withholding of information describing meetings, discussions or negotiations with EU participants in the HLCG process, nor information that was ultimately disclosed to the

"outside party" during those meetings, discussions or negotiations.[10]

### C. DOJ Has Withheld Documents that Are Neither "Predecisional" Nor "Deliberative"

In conducting a *de novo* review and deciding whether a document should be protected under the deliberative process privilege, courts "look to whether the document is 'predecisional' — whether it was generated before the adoption of an agency policy — and whether the document is 'deliberative' — whether it reflects the give-and-take of the consultative process." *Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 217 (D.D.C. 2005 (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) (internal quotation marks omitted).

While a "draft" version of a document may, in certain circumstances, be legitimately withheld under Exemption 5, "designation of a document as a 'draft' does not automatically trigger proper withholding under Exemption 5."  *Defenders of Wildlife v. Dep't of Agric.*, 311 F. Supp. 2d 44, 58 (D.D. C. 2004) (citing *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 257 (D.C. Cir. 1982). As the D. C. Circuit explained in *Arthur Andersen*,

> *Coastal States* forecloses the Agency's argument that any document identified as a "draft" is per se exempt.  Even if a document is a "draft of what will become a final document," the court must also ascertain "whether the document is deliberative in nature."

679 F.2d at 257-58 (citations omitted).  Because DOJ has failed to provide sufficient contextual information to understand the role particular documents played in a particular decisionmaking process, as well as the agency employees vested with authority to conduct HLCG negotiations, it is impossible to ascertain whether documents labeled as "drafts" are, in fact, deliberative.  For

---

[10]  The Ellis Declaration is replete with references to such information.  *See*, *e.g.*, ¶ 50 ("documents created/edited by U.S. HLCG experts recommending, outlining, and discussing topics to be deliberated at HLCG and JHA meetings");  ¶ 76 ("U.S. HLCG experts summarized several meetings between the U.S. and E.U").

example, OIP's declaration states that documents within Category 2(a) — which contains

"various drafts" of documents — are "[b]y their very nature as drafts . . . predecisional

preliminary versions of what will later become a final document." Brinkman Decl. ¶ 25.

However, DOJ has failed to indicate whether final versions of these "draft" documents have been

released or the role that these drafts played within the broader HLCG decisionmaking process.[11]

In the absence of any "identification of the specific final decisions to which" the drafts

contributed, neither plaintiff nor this Court are "positioned to pass upon the applicability" of the

deliberative process privilege. *Senate of Puerto Rico ex rel. Judiciary Comm. v. Dep't of Justice*,

823 F.2d 574, 585 (D.C. Cir. 1987)).

Moreover, "[e]ven if [a] document is predecisional at the time it is prepared, it can lose

that status if it is adopted, formally or informally, as the agency position on an issue or is used by

the agency in its dealings with the public." *Coastal States*, 617 F.2d at 866; *see also Tax*

*Analysts v. IRS*, 483 F. Supp. 2d 8, 13 (D.D.C. 2007). This is particularly true of "talking points"

— memos prepared for senior agency officials in preparation for meetings, hearings, or

negotiations. *See Elec. Privacy Info. Ctr. v. Dep't of Justice*, 511 F. Supp. 2d 56, 71 (D.D.C.

2007) ("[T]he likelihood" that withheld materials "have been relied upon or adopted as official

positions after their preparation . . . is particularly high in the case of 'talking points.'"); *see also*

*N.Y. Times Co. v. Dep't of Defense*, 499 F. Supp. 2d 501, 514-515 (S.D.N.Y. 2007) (holding

"talking points and the formulation of responses to possible questions" prepared "to aid in

briefing officials and preparing them to answer questions" not properly withheld under

Exemption 5.)

---

[11]   To the extent that DOJ will identify withheld "draft" versions of documents that have been released to EFF in final form, EFF will withdraw its challenge to the withholding of the draft versions.

Indeed, this Court has held "draft talking points" were not properly withheld where the agency "identifies nothing more specific about the content of [the] document, does not specify its place in a particular decisionmaking context, and does not indicate whether, as a draft, these talking points were actually used in communications with the public." *Judicial Watch*, 297 F. Supp. at 265.

Both OIP and CRM have withheld "talking points" and "briefing materials" here. Category 1(e) of OIP's *Vaughn* index discusses "briefing materials" created "for upcoming meetings with EU member state dignitaries." OIP *Vaughn* at 5. Category 2(c) contains a "briefing book" for the Attorney General, as well as "draft talking points/briefing papers for upcoming meetings with EU member state dignitaries." CRM's *Vaughn* index likewise discusses "[d]rafts/working versions of briefing books/documents for the Attorney General for various high-level meetings." CRM *Vaughn* at 1. Again, however, because DOJ's *Vaughn* submissions do not discuss the specific content of these briefing materials, it is impossible to determine whether the material contained within the document reflected or was "relied upon or adopted as official positions after their preparation." *Elec. Privacy Info. Ctr.*, 511 F. Supp. 2d at 71. Consequently, the agency has not satisfied its burden of demonstrating the applicability of Exemption 5 to many of the "draft briefing materials" and "talking points" withheld in their entirety.

### D.  Factual Material May Not Be Withheld Under Exemption 5

"Under the deliberative process privilege, factual information generally must be disclosed." *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992); *see also Judicial Watch v. Dep't of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004) (noting that Exemption 5 may not be invoked to "protect material that is purely factual"); *Cuban*, 744 F.

Supp. 2d at 77-78 (same).  While the rationale behind the deliberative process privilege of

Exemption 5 encourages candor in deliberative discussions, the requirement that facts must be

disclosed is intended to enhance the integrity of agency deliberations.  *See Quarles v. Dep't of*

*Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990) (noting that "the prospect of disclosure is less likely to

make an adviser omit or fudge raw facts").

In withholding nearly 500 pages of responsive material in full, it seems almost certain

that DOJ has withheld a significant amount of factual material appropriate for release.  This

conclusion is supported by the unredacted portions of documents released to EFF: in one

example, a document titled, "Meeting With New US Ambassador to the European Union,

William Kennard," the section heading "Background" was released, but the entire substantive

content of the section was withheld under Exemption 5.  Exhibit 6 (filed herewith) (record

numbered CRM-000761).  In all likelihood, a section providing "background" would be a

routine presentation of factual information, making it unavailable for protection under the

deliberative process privilege of Exemption 5.  Again, however, defendant's *Vaughn*

submissions are too general and sweeping to allow for a meaningful assessment of the extent to

which factual material has been withheld. Nevertheless, it appears likely that a substantial

amount of "purely factual" material has been redacted from the material disclosed.[12]

### III.   DOJ Has Failed to Satisfy Its Obligation Under FOIA to Release Reasonably Segregable Material

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided . . .

after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  The D.C. Circuit has made

---

[12]  As previously discussed, much of the withheld material appears to summarize what occurred at various bi-lateral meetings.  In addition to the waiver of privilege that precludes the withholding of such information, it is also of a factual nature and, for that reason as well, must be disclosed.

clear that the "'segregability' requirement applies to all documents and all exemptions in the FOIA." *Ctr. For Auto Safety v. EPA*, 731 F.2d 16, 21 (D.C. Cir. 1984); *see also Schiller v. NLRB*, 964 F.2d 1205, 1209 (D.C. Cir. 1992). This comports with the policy favoring maximum disclosure and prevents the withholding of entire documents, *see Billington v. Dep't of Justice*, 233 F.3d 581, 586 (D.C. Cir. 2000), unless the agency can demonstrate that the non-exempt portions of a document are "inextricably intertwined with exempt portions." *Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027 (D.C. Cir. 1999) (quoting *Mead Data Cent., Inc.*, 566 F.2d at 260).

So important is the segregability requirement to FOIA's broad disclosure mandate that trial courts have an affirmative duty to consider the issue of segregability *sua sponte*. *Trans-Pacific Policing Agreement*, 177 F.3d at 1028; *see also Billington*, 233 F.3d at 586. In fact, "[i]t is error for a district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Schiller*, 964 F.2d at 1210 (citations and internal quotation marks omitted); *see also Billington*, 233 F.3d at 586.

Here, DOJ has withheld over 500 pages of material in full under Exemption 5. It is exceedingly likely that, within the 500 pages withheld in their entirety, *some* material exists that could be reasonably segregated from the properly withheld material and released. This is particularly true with respect to purely factual information which, as we have shown, DOJ appears to have withheld in many instances.

## Conclusion

As this Court has noted, "producing a properly detailed *Vaughn* index is a considerable burden" for an agency, but "Congress, in enacting FOIA, has chosen to place this burden upon agencies, giving them a clear, if difficult choice" — to either disclose requested records or to

expend the agency resources necessary to provide FOIA plaintiffs and courts with reasonably specific descriptions of the documents withheld and the justification for doing so.  *Judicial Watch*, 297 F. Supp. 2d at 271.  In this case, DOJ has failed to make that choice and has, instead, attempted to navigate an untenable middle-ground.  This middle-ground — releasing some documents, while categorically describing and withholding others — fails to satisfy the agency's obligations under the law.

In light of DOJ's obligation to provide plaintiff and the Court with a reasonably specific description of the documents being withheld, its unsupported invocation of Exemption 5 to withhold a substantial amount of responsive information, and its failure to segregate non-exempt information, the Court should deny defendant's motion for partial summary judgment and grant EFF's cross-motion for partial summary judgment.

Respectfully submitted,

*/s/ David L. Sobel*
DAVID L. SOBEL
D.C. Bar No. 360418
Electronic Frontier Foundation
1818 N Street, N.W., Suite 410
Washington, DC 20036
(202) 797-9009

MARK RUMOLD (Admitted in New York)
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA 94110
(415) 436-9333

Counsel for Plaintiff