**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                )
**ELECTRONIC FRONTIER FOUNDATION**,   )
                                                )
       Plaintiff,                        )
                                                )
v.                                              )        C.A. No. 10-CV-0641 (RBW)
                                                )
**DEPARTMENT OF JUSTICE**,            )
                                                )
       Defendant.                       )
_____)

## <u>REPLY IN SUPPORT OF PLAINTIFF'S CROSS-MOTION<br>FOR PARTIAL SUMMARY JUDGMENT</u>

### <u>INTRODUCTION</u>

Plaintiff Electronic Frontier Foundation ("EFF") respectfully submits this reply in

support of its cross-motion for partial summary judgment.  EFF brought this case under the

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking disclosure of agency records

maintained by defendant, the Department of Justice ("DOJ"), concerning its involvement in the

High Level Contact Group ("HLCG").  *See* Plt. Compl. for Injunctive Relief (Dkt. No. 1), ¶ 1.

DOJ moved for partial summary judgment on June 15, 2011 (Dkt. No. 20), and EFF opposed the

agency's motion and cross-moved for partial summary judgment on July 18, 2011 (Dkt. Nos. 23,

24).

In EFF's opposition and cross-motion for partial summary judgment (Dkt. No. 24), EFF

challenged the sufficiency of DOJ's *Vaughn* submissions, the applicability of its withholdings

under Exemption 5, and the agency's satisfaction of its obligation to segregate and release non-

exempt material.  Plt. Opp. & Cross Mot. at 3-22 (Dkt. No. 24).  In an effort to narrow the scope

of the litigation for both the Court and DOJ, EFF offered to withdraw any challenges to "draft"

documents for which DOJ could locate a final version that had previously been released to EFF. *Id.* at 19 n.11 (Dkt. No. 24). Subsequent to the filing of EFF's cross-motion, DOJ located approximately 114 pages of documents withheld as "drafts," and EFF agreed to withdraw its challenge to those documents. Def. Opp. & Rep., Exh. 4 (Dkt. No. 31).

However, despite EFF's best efforts to narrow the scope of its challenges, nearly 650 pages of material related to the HLCG, withheld either in part or in their entirety under FOIA Exemption 5, remain at issue in this case.[1] *See* Plt. Opp. & Cross Mot. at 3 (Dkt. No. 24). In DOJ's opposition to EFF's cross-motion, (Dkt. No. 31), the agency largely repeats the same general and unspecific claims it made in its original moving papers. EFF now submits this reply to address the arguments raised by DOJ and to reiterate the inadequacy of its *Vaughn* submissions, the impropriety of its withholdings under Exemption 5, and the agency's failure to segregate and release non-exempt material. For the reasons more fully described below, DOJ has failed to satisfy the procedural and substantive burdens required under FOIA. As a result, EFF respectfully asks this Court to deny DOJ's motion for partial summary judgment, grant EFF's cross-motion, and order the agency to immediately produce the improperly withheld records.

## ARGUMENT

EFF's opposition and cross-motion described three distinct ways in which DOJ has not satisfied its obligations under the FOIA. Plt. Opp. & Cross Mot. at 5 (Dkt. No. 24). First, the agency has failed to satisfy its procedural burden of providing EFF and the Court with *Vaughn* submissions that provide the necessary specificity and contextual information to assess the

---

[1] EFF believes that the Office of Information Policy ("OIP") has withheld 140 pages in full and 97 pages in part. Plt. Opp. & Cross Mot. at 3. The Criminal Division ("CRM") has withheld 361 pages in full and 166 pages in part. *Id.* Less the 114 pages for which EFF has withdrawn its challenge, Def. Opp. & Rep., Exh. 4 (Dkt. No. 31), EFF continues to challenge the withholding of 263 pages in part and 387 pages in full under Exemption 5.

propriety of the challenged withholdings.  *Id* at 5-12.  Second, DOJ has improperly withheld records under Exemption 5 that were shared with third parties, that contain information to which the deliberative process privilege has been waived, that are neither "predecisional" nor "deliberative," and that contain factual information for which the deliberative process privilege is unavailable.  *Id*. at 12-21.  Finally, DOJ is not entitled to summary judgment because it has failed to demonstrate compliance with FOIA's requirement that all reasonably segregable, non-exempt material be severed and released.  *Id*. at 21-22.  We address these issues in turn.

## I.   DOJ's *Vaughn* Submissions Fail to Satisfy Its Burden under FOIA

EFF's opening brief highlighted two failings of DOJ's *Vaughn* submissions — first, the failure to adequately describe the records withheld in part and in full, *id*. at 6-9; and, second, the failure to describe records with the heightened specificity necessary to withhold records under Exemption 5.  *Id*. at 9-12.  In the absence of satisfactorily descriptive *Vaughn* submissions, DOJ has failed to satisfy its procedural burden and is not entitled to summary judgment.

### A.   DOJ's Vague and Categorical *Vaughn* Submissions Fail to Satisfy Its Procedural Burden Under FOIA

Citing longstanding D.C. Circuit precedent, EFF's brief described the specificity required of a FOIA defendant's *Vaughn* submissions in order to support a motion for summary judgment. *Id*. at 6.  Above all else, "[s]pecificity is the defining requirement of the *Vaughn* index and affidavit; affidavits cannot support summary judgment if they are . . . too vague or sweeping.'" *King v. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987) (internal quotations omitted); *see also Ctr. for Medicare Advocacy, Inc. v. Dep't of Health and Human Serv.* 577 F. Supp 2d 221, 238 (D.D.C. 2008) ("A *Vaughn* index must be sufficiently detailed to permit the FOIA requester and the court to review the applicability of the claimed exemptions on a *document by document* basis.") (emphasis added).  In contrast to the requisite specificity, DOJ's *Vaughn* submissions lump large numbers of documents and information into single categorical descriptions. The

agency's justifications for withholding these categories of documents, too, are made generically and categorically. Such sweeping categories fail to satisfy DOJ's procedural burden of providing a "detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977).

In response, DOJ cites two cases that, according to the agency, demonstrate that categorical *Vaughn* submissions are sufficient to satisfy its burden. DOJ's reliance on these cases, however, is unavailing, and the cases fail to justify the agency's clearly inadequate submissions. In fact, the cases cited by defendant provide a useful point of comparison to assess the adequacy of DOJ's *Vaughn* submissions in this case.

First, the agency cites *Smith v. Dep't of Labor*, No. 10-1253, 2011 WL 3099703 (D.D.C. July 26, 2011), to assert that *Vaughn* submissions need not "contain a factual description of each redacted document." Def. Opp. & Rep. at 3 (Dkt. No. 31) (citations omitted). *Smith*, however, is distinguishable from this case in two vital respects. First, only 77 *lines* of redacted text were at issue in *Smith*, compared to the nearly 400 *pages* of material withheld in its entirety here. *Compare Smith*, 2011 WL 3099703 at *1, *with* Introduction at 2, n.1, *supra*. In fact, every document at issue in *Smith* had already been released to the requester; the motion for summary judgment concerned only redactions to "small portions" of documents. *Smith*, 2011 WL 3099703 at *6. Second, the categorical *Vaughn* submissions in *Smith* primarily described the withholding of agency-employee names and contact information under Exemption 6 and 7(c)[2] — information that lends itself far more readily to categorical treatment than records withheld under

_____

[2] In contrast to the plaintiffs in *Smith*, EFF here does not even challenge DOJ's withholding of agency personnel information under Exemption 2 and 6.

Exemption 5, which requires a searching analysis of a record's "deliberative" and "predecisional" nature. *Smith,* 2011 WL 3099703 at *7, 9; *People for the American Way v. Nat'l Park Serv.*, 503 F.Supp.2d 284, 295 (D.D.C. 2007) ("The need for a detailed description [of withheld records] is of particular importance . . . where the agency is claiming that the documents are protected by the deliberative process privilege of Exemption 5.") (internal quotations omitted).

Notably, however, *Smith* did involve one contested withholding under Exemption 5, implicating six lines of redacted text. For the six lines of text, the *Smith* defendant's *Vaughn* describes the information withheld ("information concerning a possible action to take, *i.e.* a proposed citation, which was different from the citations ultimately issued by the Mine Safety and Health Administration at the conclusion of its investigation") and the rationale for its withholding ("the release of this information could reasonably be expected to confuse the public with reasons and rationales that were not in fact ultimately the grounds for MSHA's decision to issue difference citations"). In contrast, for example, "Category A" of CRM's *Vaughn* index here describes 41 documents withheld in full, consisting of over 250 pages of information, with a single, categorical description and generic justification for the information's withholding. Def. Opp. & Rep., Exh. 2 ("CRM Vaughn Index") at 1 (Dkt. No. 30). In comparison with the highly specific description of six lines of text provided by the defendant in *Smith*, DOJ's *Vaughn* submissions here are clearly inadequate. For the Court's convenience, a copy of the *Smith Vaughn* index is filed herewith as Exhibit A.

DOJ also seeks to rely upon *People for the American Way Foundation v. Nat'l Park Serv.*, 503 F.Supp.2d 284 (D.D.C. 2007), to support the proposition that records withheld under Exemption 5 may be described categorically. Def. Opp. & Rep. at 3 (Dkt. No. 31). But DOJ's

reliance is again unavailing.  The agency's use of categorical descriptions in *People for the American Way* is fundamentally different from the *Vaughn* submissions at issue in this case.  The *People for the American Way* defendant's *Vaughn* index individually described "the type of *each document*, the total number of pages, the subject matter [of *each document*], and, if applicable, the creator and recipient of *each document*" as well as "specific descriptions of *each record*, including what, if anything, was withheld and the basis for the withholding, if any."  503 F.Supp.2d at 295 (emphasis added).  After specifically describing each document,[3] the defendant used categorical *justifications* to describe the bases for the withholding of the individually described documents.  *See People for the American Way Vaughn* Index (Part 1), filed herewith as Exhibit B.

In this case, however, DOJ's *Vaughn* submissions both categorically describe the justification for withholdings as well as categorically describe the withheld records.  *See e.g.*, CRM Vaughn Index at 1 (Dkt. No. 30); Def. Mot. for S.J., Exh. 3 ("CRM Decl.") at ¶¶ 36, 37. As the D.C. Circuit has held, "[c]ategorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate."  *King*, 830 F.2d at 224.  For DOJ's reliance on *People for the American Way* to be appropriate, DOJ's *Vaughn* submissions would need to individually describe each withheld document.  Thus, for example, each of the 41 documents in CRM's "Category A" would require an individual description, instead of its current categorical label.

Finally, DOJ claims that — had EFF simply viewed its *Vaughn* submissions "in *pari materia*" — the "sufficient level of specificity and context" would be apparent.  Def. Opp. &

---

[3] Like is the case here, a "document" in *People for the American Way* often constituted multiple pages of information.

Rep. at 4 (Dkt. No. 31).  As specific evidence of the sufficiency of its *Vaughn* submissions, DOJ generally cites OIP's declaration concerning Groups 1(c) and 2(b). *See id.* (citing OIP Decl. ¶¶ 25, 29).  Examining one of DOJ's exemplars, Group 2(b), is illustrative.  According to OIP's *Vaughn* index, Group 2(b) contains "discussion papers and general comments, including e-mails among [various agency personnel] on drafts and revisions to drafts."  Def. Mot. for S. J. Exh. 2 ("OIP *Vaughn*") at 6 (Dkt. No. 20).  DOJ assigned 10 document numbers to these "discussion papers and general comments, including emails," constituting 11 pages of material withheld in its entirety.  *Id.*  These "discussion papers and general comments, including emails" were dated either 4/3/09, or 9/28/09, or were undated.  *Id.*  Turning to OIP's supporting affidavit, Group 2(b) — along with Groups 1(c) and 2(a) — are described as "undated draft statements, agreements, agendas, and associated language exchanged and discussed amongst the U.S. members of the HLCG, including many 'stages' of drafts with recommended contextual changes."  Def. Mot. for S. J. Exh. 1 ("OIP Decl.") ¶ 25 (Dkt. No. 20).  Even viewing the *Vaughn* submissions "in *pari materia*," as DOJ suggests, the descriptions fall woefully short, "lacking in that specificity of description [the D.C. Circuit has] repeatedly warned is necessary to ensure meaningful review of an agency's claim to withhold information subject to a FOIA request."  *King*, 830 F.2d at 223; *see also Ctr. for Medicare Advocacy,* 577 F. Supp. at 238.

When viewed in light of longstanding D.C. Circuit precedent and when compared with the *Vaughn* submissions utilized in DOJ's own selected authorities, the *Vaughn* submissions at issue in this case are clearly inadequate. The agency's failure to specifically describe the documents at issue prevents both EFF and the Court from passing upon the propriety of its withholdings. Consequently, DOJ has not satisfied its procedural burden to support the withholding of the disputed records.

**B.**     **DOJ's *Vaughn* Submissions Fail to Provide the Contextual Specificity Necessary to Support the Withholding of Records Under Exemption 5**

Because DOJ's generalized and categorical descriptions of its withholdings fail to satisfy the general requirement of specificity for *Vaughn* submissions, those same submissions necessarily fail to satisfy the heightened specificity required when invoking Exemption 5.  "The need to describe each withheld document when Exemption 5 is at issue is *particularly acute* because the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process."  *Animal Legal Def. Fund, Inc. v. Dep't of the Air Force*, 44 F.Supp.2d 295, 299 (D.D.C. 1999) (quoting *Coastal States*, 617 F.2d at 867) (emphasis added).  By failing to satisfy the general requirement of specificity, DOJ necessarily fails to satisfy this heightened requirement.

DOJ responds in two ways: first, by arguing that "there is no requirement for agencies to conduct research on plaintiff's behalf," Def. Opp. & Rep. at 5, n.5 (Dkt. No. 31); and, second, by again directing EFF to the *Vaughn* indices, supporting affidavits, and documents previously released by the agency.  *Id.* at 5-6.

While DOJ is correct that agencies are not required to perform "research" in response to a FOIA *request*, *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003), when seeking to support a motion for summary judgment during FOIA *litigation*, however, the agency is required to provide the Court with a sufficient factual basis to satisfy its burden in support of its motion.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In FOIA cases, especially in cases involving withholdings under Exemption 5, that burden requires the agency to provide contextual information for plaintiff and the Court to assess the propriety of the exemption claims.  *See Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C.

Cir. 1992) ("The first step [in assessing the propriety of an Exemption 5 claim] is to examine the context in which the materials are used.") (internal citations and quotations omitted).  In Exemption 5 cases, this requires information concerning "the function and significance of the document(s) in the agency's decisionmaking process." *Arthur Anderson & Co. v. IRS*, 679 F.2d 254, 258 (D.C. Cir. 1982).  Moreover, Exemption 5 is improperly invoked in cases where an otherwise deliberative document was relied upon or formed the basis for an ultimate agency opinion.  *Coastal States*, 617 F.2d at 866-67.  Thus, in order to satisfy its burden under FOIA, an agency may, indeed, be required to perform "research" — research regarding a withheld document's role in the decisionmaking process, its significance, and whether that document (or the information contained therein) ultimately formed the basis for the agency's final position.  This "research," in turn, could then be used to create a sufficiently detailed *Vaughn* index that would provide plaintiff and the Court with an adequate basis to assess the propriety of the agency's withholdings.  Indeed, while producing a "properly detailed *Vaughn* index is a considerable burden, . . . Congress, in enacting FOIA, has chosen to place this burden upon agencies." *Judicial Watch v. USPS*, 297 F.Supp.2d 252, 271 (D.D.C. 2004).

DOJ also asserts that EFF "could have easily determined the context of the withheld records" by examining partially disclosed records, referring to the *Vaughn* indices alone, and by examining the narrative declarations.  Def. Opp. & Rep. at 5 (Dkt. No. 31).  In essence, DOJ suggests that — in order to understand the context of the withheld documents — EFF and this Court should turn to the materials that EFF has already established are lacking adequate specificity and context.  *See* Section I.A., *supra*.[4]  Such a suggestion in unavailing.

---

[4] Setting aside the circularity of DOJ's argument, resort to the *Vaughn* submissions, using the agency's three-step formula for determining context, is illustrative.  For example, "Category A" of CRM's *Vaughn* index describes "drafts/working versions of briefing books for the Attorney

## II.   DOJ Has Not Satisfied Its Burden of Demonstrating that Documents Were Properly Withheld Under  Exemption 5

As described in EFF's opening brief, DOJ has failed to satisfy its burden to withhold documents under the deliberative process privilege of Exemption 5.  First, the agency has not satisfied its burden of demonstrating that some of the withheld documents have not been shared outside the Executive Branch.  Plt. Opp. & Cross Mot. at 13-16 (Dkt. No. 24).  Second, DOJ has failed to show that the information contained within withheld documents was not disclosed to third-parties.  *Id*. at 16-18.  Third, the agency has likely withheld information that is neither "deliberative" nor "predecisional."  *Id*. at 18-20.  And, finally, DOJ has likely withheld purely factual information for which withholding under Exemption 5 is unavailable.  *Id*. at 20-21.  For these reasons, DOJ's motion for summary judgment should be denied, plaintiff's cross-motion should be granted.

### A.   DOJ Has Withheld Documents that Are Not "Inter-agency or "Intra-agency"

Exemption 5 applies only to records that are "inter-agency or intra-agency."  5 U.S.C. § 552(b)(5).  Thus, "communications between agencies and outside parties are not protected under Exemption 5."  *Ctr. for Int'l Envtl. Law v. Office of the U.S. Trade Rep.*, 237 F. Supp. 2d 17, 25 (D.D.C. 2002).  In EFF's opening brief, we noted that, based upon information contained within

---

General for various high-level meetings."  Def. Mot. for S. J. Exh. 4 ("CRM Vaughn Index") at 1 (Dkt. No. 20).  At these meetings, according to CRM's supporting declaration, the "work and progress of the HLCG was a potential topic of discussion."  Def. Mot. for S. J. Exh. 3 ("CRM Decl.") at ¶ 32 (Dkt. No. 20).  From this description, we can tell the Attorney General attended meetings at which the HLCG was a potential topic of conversation.  There is *no* information concerning the topics of discussion at the meeting or whether the Attorney General relied upon any of the information in the briefing materials.  And, to the extent that DOJ suggests additional context can be gained from review of partially released documents, those documents are not before the Court and, therefore, are not an adequate basis for satisfaction of DOJ's burden.  Even if the documents were before the Court, however, it is highly unlikely that the Court, like EFF, could gain any meaningful context from the partially released records.

the documents released to EFF, it appears that some of the withheld documents may have been

released to DOJ's European Union ("EU") counterparts.  Plt. Opp. & Cross Mot. at 14 (Dkt. No.

24).  In particular, one document – *The Way Forward for High Level Contact Group* – is

described as being "provid[ed] to the Czechs," yet no version of the document appears to have

been released to EFF.  *Id*. at 14.

DOJ responds in two ways: first, by resorting to its already-demonstrated inadequate

declarations; and, second, by arguing that it is not "required to prove a negative, *i.e.* that the

materials in question have not been released" to parties outside the Executive Branch.  While

DOJ is not required to "prove a negative," in order to prevail on its motion for summary

judgment, the agency *is* required to show "that there are no genuine issues of material fact and

that [defendant] is entitled to judgment as a matter of law."  *People for the American Way*, 503

F.Supp.2d at 291 (citing Fed. R. Civ. P. 56).   Information in the records released by DOJ casts

doubt upon the reliability of the supporting affidavits.  Plt. Opp. & Cross Mot. at 14 (Dkt. No.

24).  DOJ had the opportunity to respond with more specifically tailored *Vaughn* submissions —

submissions that could have addressed the particular questions EFF posed — but, instead, the

agency chose to describe EFF's well-supported concerns as "speculative" and rely upon its

original, inadequate declarations.  Def. Opp. & Rep. at 7-8 (Dkt. No. 31).  Thus, in light of

information tending to rebut the agency's declarations, DOJ has failed to satisfy its burden and is

not entitled to summary judgment.

### B.     Deliberative Process Protection Has Been Waived for Information Contained within Documents Withheld Under Exemption 5

As described in EFF's opening brief, DOJ has not only failed to satisfy the threshold

showing that many of the withheld  *documents* qualify as "inter-agency or intra-agency"

memoranda under Exemption 5, but the agency has similarly failed to show that its claim of

privilege to the *information* contained within many of the records has not been waived.  Plt. Opp. & Cross Mot. at 16-18 (Dkt. No. 24).  Relying on D.C. Circuit precedent, EFF described how DOJ's withholding of negotiation positions, accounts of negotiations, or other information describing the information exchanged between the agency and the EU was improper under Exemption 5.  *Id*. at 17 (citing *Mead Data Cent., Inc v. Dep't of the Air Force*, 566 F.2d 242, 257-58 (D.C. Cir. 1977)).

Notably, DOJ does not directly respond to EFF's argument: the agency merely states that it has not "with[e]ld summaries of the U.S. government's negotiating position."  Def. Opp. & Rep. at 8 (Dkt. No. 31).  DOJ's *Vaughn* submissions, however, tend to suggest otherwise: for example, CRM's "Category I" contains documents in which "U.S. HLCG experts summarized several meetings between the U.S. and E.U."  Def. Mot. for S.J., Exh. 3 ("CRM Decl.") at ¶ 76 (Dkt. No. 20).  "Category H" includes documents describing "(a) issues raised by the E.U. during deliberations, (b) responses by the E.U. to ideas presented by the United States, and/or (c) arguments made by the E.U. regarding remaining action items."  *Id*. at ¶ 71.  Again, in light of evidence casting doubt upon the applicability of DOJ's Exemption 5 claims for many documents, summary judgment in the agency's favor is unwarranted.

### C.    DOJ Has Withheld Documents that Are Neither "Predecisional" Nor "Deliberative"

EFF's assertion that DOJ has withheld information that is neither "predecisional" nor "deliberative" is based primarily on two facts: first, the generic justification provided in the agency's *Vaughn* submissions for withholding documents as "drafts," Plt. Opp. & Cross Mot. at 18-19 (Dkt. No. 24); and, second, the fact that, in the absence of more specific descriptions of a document's "predecisional" nature, the withholding of "briefing books" and "talking points" is improper under Exemption 5.  *Id*. at 19-20.

While "draft" documents may be legitimately withheld under Exemption 5, DOJ's "designation of a document as a 'draft' does not automatically trigger proper withholding under Exemption 5." *Defenders of Wildlife v. Dep't of Agriculture*, 311 F.Supp.2d 44, 58 (D.D.C. 2004). As noted above, in an attempt to narrow the breadth of issues remaining for the Court to consider, EFF offered to withdraw its challenges to "draft" documents for which DOJ could locate a final version that had been released to EFF. Plt. Opp. & Cross Mot. at 19, n. 11 (Dkt. No. 24). DOJ located five final documents that had been released to EFF and 116 pages constituting those five documents' corresponding "drafts," and EFF has thus withdrawn its challenge to those documents. Def. Opp. & Rep. at 8, Exh. 1 (Dkt. No. 31). Nevertheless, numerous examples of "draft" documents still exist in DOJ's *Vaughn* submissions — "draft talking points," "draft briefing papers," and "draft/working versions of briefing books/documents," Def. Mot. for S.J., Exh. 2 (OIP *Vaughn* Index), Category 2(c) at 6 (Dkt. No. 20); Def. Opp. & Rep. (CRM Supp. *Vaughn* Index) Category A at 1 (Dkt. No. 31). In the absence of more specific descriptions of the documents and the role those documents played in a decision-making process, mere identification of a document as a "draft" is insufficient to satisfy DOJ's burden.

In response to EFF's argument that the information contained within "talking points" and "briefing materials" may ultimately have been relied upon and used in communications with the agency's EU counterparts, DOJ suggests that "courts have rejected claims that documents relating to action ultimately not taken did not qualify as predecisional." Def. Opp. & Rep. at 9 (Dkt. No. 31). DOJ seems to suggest, for the first time, that senior DOJ officials, including the Attorney General, did not rely on the information contained within the briefing books or talking points in their interactions with EU representatives. *See id.*

Again, DOJ's affidavits suggest otherwise: for example, documents in OIP's Group 1(e) and 2(c) were "prepared by staff within the Department to assist senior leadership officials – including the Attorney General – in addressing various legal and policy points concerning an agreement between the United States and European Union concerning data privacy protection." OIP Decl. at ¶ 31.  The description further notes that "[s]enior officials *rely heavily* on the creation of such briefing materials" and, through their review of the briefing materials, "[t]hese senior officials are then prepared to decide how best to present [defendant's] views to the Department's counterparts, to respond to inquiries and concerns, and to represent the U.S. government's interest in negotiations." *Id*. at ¶ 32 (emphasis added).  Given the fact that senior officials "rely heavily" on briefing materials, it seems extremely likely that information contained within the documents was disclosed to DOJ's EU counterparts in the course of meetings, conversations, or negotiations.  For this reason, Exemption 5 is unavailable to withhold information contained within the preparatory materials that was ultimately relied upon or disclosed.  *See Elec. Privacy Info. Ctr. v. Dep't of Justice*, 511 F.Supp.2d 56, 71 (D.D.C. 2007) ("[T]he likelihood that withheld materials have been relied upon or adopted as official positions after their preparation . . . is particularly high in the case of 'talking points.'") (internal citations and quotations omitted).  DOJ's claim that the "recommendations [within the briefing materials] may not have been ultimately adopted" is contradicted by its own supporting documentation. Thus, DOJ has failed to satisfy its burden of demonstrating that the information contained within the briefing materials was not relied upon or disclosed to third parties.

### D.      DOJ Has Improperly Withheld Purely Factual Material Under Exemption 5

Exemption 5 may not be invoked to "protect material that is purely factual." *Judicial Watch v. Dep't of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004).  EFF's opening brief noted that,

in withholding nearly 400 pages of material in its entirety, it is extremely likely that DOJ has improperly withheld factual material.  Plt. Opp. & Cross Mot. at 20-21 (Dkt. No. 24).  Also, to the extent that withheld records describe meetings, negotiations, or discussions, that information is similarly factual and is improperly withheld under Exemption 5.  *Id*. at 21 n. 12.

In response, DOJ merely reiterates its claim that a segregability analysis has been performed and all factual material has been released from the withheld records.  In withholding nearly 400 pages of records, however, it seems particularly unlikely that *no* factual material from such a large amount of information could be segregated and released.  For example, EFF has highlighted one document, CRM-00761, that seemed particularly likely to contain improperly withheld factual information.  *Id*. at 21 (describing subject heading of "Background" and its corresponding paragraph's entire withholding under Exemption 5).  When evidence exists in the records released to EFF suggesting that factual material has been withheld under Exemption 5, it is likely that other documents withheld in their entirety may similarly contain improperly withheld factual material.  In light of such indications, DOJ has failed to persuasively establish that *all* factual material has been released.

## IV.     DOJ Has Failed to Satisfy Its Obligation to Release Reasonably Segregable Material

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  A segregability analysis is so vital to FOIA's broad mandate of disclosure that a district court has an affirmative duty to consider segregability *sua sponte*.  *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).  "A district court that 'simply approve[s] the withholding of an entire document without entering a finding on segregability, or lack thereof,' errs."  *Krikorian v. Dep't of State*, 984 F.2d 461, 467 (D.C. Cir. 1993) (citations omitted).

Here, while DOJ repeats its claim of having released all reasonably segregable material, absent more specific *Vaughn* submissions, both EFF and the Court are unable to assess the sufficiency of defendant's segregability analysis.  *See Animal Legal Def. Fund Inc.*, 44 F.Supp.2d at 302 (holding segregability analysis "patently insufficient" when declaration solely stated that no information was "reasonably segregable becaues it was so interwined with protected material . . . or its release would have revealed the underlying protected material.");  *Beltranena v. Clinton*, 770 F. Supp. 2d 175, 186 (D.D.C. 2011) (agency did not meet its burden where its "*only* explanation as to how it met the segregability requirement is one blanket statement in the last paragraph of [its] declaration") (emphasis in original).  DOJ urges this Court to permit the withholding of nearly 400 pages of documents without more description than a standard, generic claim "that there were no further purely factual portions segregable from the government's deliberations."  Def. Opp. & Rep. at 10 (Dkt. No. 31).  Without a more searching analysis "explaining in detail which portions of the document are disclosable and which are allegedly exempt," *Edmonds Inst. v. Dep't of Interior*, 383 F.Supp.2d 105 (D.D.C. 2005), DOJ has not satisfied its burden of establishing that segregable material has been disclosed, and thus is not entitled to summary judgment.

## V.    The Court's *In Camera* Inspection of the Withheld Records May Be Necessary to Ensure a Thorough *De Novo* Review

As described above, because DOJ has failed to satisfy both its procedural and susbstantive burdens for summary judgment, this Court should grant EFF's cross-motion for summary judgment and order the agency to immediately produce the improperly withheld records.  However, should the Court have doubts as to the inadequacy of DOJ's showing, EFF respectfully suggests the Court conduct an *in camera* inspection of the withheld documents.

As the D.C. Circuit has explained, Congress intended that "the *de novo* review mandated by the Freedom of Information Act be extremely thorough so as to insure that agencies do not impermissibly expand by unreviewed interpretations the particular types of matters Congress has exempted from disclosure." *Allen v. CIA*, 636 F.2d 1287, 1297 (D.C. Cir. 1980) (citation and internal quotation marks omitted).  Thorough judicial review of the government's exemption claims is particularly appropriate in light of the requester's informational disadvantage, peculiar to the context of FOIA litigation:

> [I]t is anomalous but obviously inevitable that the party with the greatest interest in obtaining disclosure is at a loss to argue with desireable legal precision for the revelation of the concealed information.  Obviously the party seeking disclosure cannot know the precise contents of the documents sought; [withheld] information is, by definition, unknown to the party seeking disclosure . . .  In a very real sense, only one side to the controversy (the side opposing disclosure) is in a position confidently to make statements categorizing information[.]

*Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973).  "In an effort to compensate" for this information deficit on the part of FOIA requesters, "the trial court, as the trier of fact, may and often does examine the document[s] *in camera* to determine whether the Government has properly characterized the information as exempt." *Vaughn*, 484 F.2d at 825.

In reviewing the validity of an agency's exemption claims, the Court "may examine the contents of such agency records *in camera* to determine whether such records or any part thereof shall be withheld." 5 U.S.C. § 522(a)(4)(B).  The decision whether to undertake *in camera* review is left to the trial court's discretion.  *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 996 (D.C. Cir. 1998).  However, summary judgment without *in camera* review is appropriate only where the government's affidavits "provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is

no evidence in the record of agency bad faith." *Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 22 (D.C. Cir. 1984).

Here, as described above, two of the conditions warranting *in camera* review are clearly present: DOJ's *Vaughn* submissions fail to provide specific information sufficient to uphold defendant's Exemption 5 claims, *see* Section I, *supra*; and there is information in the record that contradicts DOJ's justifications for withholding records under Exemption 5. *See* Section II, *supra*. Moreover, by virtue of the sheer quantity of records withheld in full by defendant, EFF is at a distinct disadvantage in assessing the quality of the agency's segregability analysis. While DOJ's resort to "patently insufficient" descriptions of its segregability analysis strongly suggests a failure to satisfy its burden under FOIA, only the Court's searching *de novo* review can confirm whether DOJ's claims are, indeed, legitimate. In light of the agency's failure to comply with FOIA's requirements, in the event the Court decides against ordering immediate production of all withheld records, it should exercise its discretion to review those records *in camera*.

The circumstances of this case clearly suggest that *in camera* inspection might be appropriate: indeed, "[a] judge has discretion to order *in camera* inspection on the basis of an uneasiness, on a doubt that he wants satisfied before he takes responsibility for a *de novo* determination." *Spirko*, 147 F.3d at 996. As described throughout this brief, and our opening brief, substantial doubt exists here, and EFF thus respectfully suggests that the Court's *de novo* review might benefit from an *in camera* inspection of the disputed material.

## Conclusion

In light of DOJ's obligation to provide EFF and the Court with a reasonably specific description of the documents being withheld, in light of the agency's improper invocation of Exemption 5 to withhold records, and in light of DOJ's failure to segregate non-exempt

information, the Court should deny defendant's motion for partial summary judgment and grant

EFF's cross-motion for partial summary judgment.


Respectfully submitted,

*/s/ David L. Sobel*
DAVID L. SOBEL
D.C. Bar No. 360418
Electronic Frontier Foundation
1818 N Street, N.W., Suite 410
Washington, DC 20036
(202) 797-9009

MARK RUMOLD (Admitted in New York)
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA 94110
(415) 436-9333

Counsel for Plaintiff