## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

—————————————————————————
)
ELECTRONIC FRONTIER            )
FOUNDATION,                    )
                               )
     Plaintiff,        )
                               )
    v.                 )    Civil Action No. 10-641 (RBW)
                               )
UNITED STATES DEPARTMENT OF    )
JUSTICE,                       )
                               )
     Defendant.        )
—————————————————————————)

## MEMORANDUM OPINION

The plaintiff, Electronic Frontier Foundation, brings this action against the United States

Department of Justice ("DOJ") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552 (2006), seeking the release of records concerning "discussions and negotiations between

the United States and the European Union with respect to the international exchange of personal

information for use by law enforcement authorities."  Complaint ("Compl.") ¶ 1.  Currently

before the Court are the parties' cross-motions for partial summary judgment.  Upon

consideration of the parties' written submissions and the entire record in this case,[1] the DOJ's

motion is denied without prejudice, and the plaintiff's cross-motion is granted in part and denied

in part without prejudice.

---

[1]  The Court considered the following filings, and their attached exhibits, in resolving the parties' cross-motions: (1) the Defendant's Motion for Partial Summary Judgment ("Def.'s Mot."); (2) the Defendant's Statement of Material Facts Not in Genuine Dispute ("Def.'s Facts"); (3) the Defendant's Memorandum of Points and Authorities in Support of its Motion for Partial Summary Judgment ("Def.'s Mem."); (4) the Plaintiff's Cross-Motion for Partial Summary Judgment ("Pl.'s Cross-Mot."); (5) the Memorandum in Opposition to Defendant's Motion for Partial Summary Judgment and in Support of Plaintiff's Cross-Motion for Partial Summary Judgment ("Pl.'s Mem."); (6) the Opposition to Plaintiff's Motion for Partial Summary Judgment and Reply in Support of Defendant's Partial Motion for Summary Judgment ("Def.'s Reply"); and (7) the Reply in Support of Plaintiff's Cross-Motion for Partial Summary Judgment ("Pl.'s Reply").

# I. BACKGROUND

The United States-European Union High Level Contact Group ("HLCG") was created at the Justice and Homeland Affairs Ministerial held on November 6, 2006, to address the issue of transnational data-sharing between law enforcement authorities.  Compl. ¶ 5.  By letter dated November 6, 2009, the plaintiff submitted a FOIA request to the DOJ seeking "all DOJ records created since January 20, 2009 that concern, discuss[,] or reflect the work or deliberations of the HLCG."[2]  Def.'s Facts ¶ 2; Compl ¶ 5.  The plaintiff's letter was routed to the DOJ's Office of Information Policy ("OIP"), which is responsible for processing FOIA requests seeking records from "seven Senior Leadership DOJ Offices, including the Office of the Deputy Attorney General."  Def.'s Facts ¶ 3.  The OIP sent the plaintiff a letter dated March 11, 2010, acknowledging receipt of its FOIA request, id. ¶ 4, and thereafter forwarded the FOIA request to the DOJ's Criminal Division "for direct processing and response," id. ¶ 6.

After receiving no records from the DOJ, the plaintiff instituted this action on April 26, 2010.  Pl.'s Mem. at 2-3.  The DOJ then began producing documents to the plaintiff starting in September 2010 and continuing into March 2011.  Def.'s Facts ¶¶ 17-19.  The OIP has released to the plaintiff "six pages in full, 97 pages with redactions (primarily under [FOIA] Exemption 5), and has withheld 140 pages in full under Exemption 5."  Pl.'s Mem. at 3.  The Criminal Division has released "410 pages in full, 166 pages with redactions (again, primarily under Exemption 5), and has withheld 361 pages in full under Exemption 5."  Id.  Over 1,000 pages of responsive records identified by the OIP and the Criminal Division have been referred for processing to the Departments of State, Homeland Security, and Commerce.  Id.

---

[2] The plaintiff has since narrowed the scope of its FOIA request to records created between January 20, 2009, and November 6, 2009.  Def.'s Mem. at 1; Pl.'s Mem. at 2 n.2.

On June 15, 2011, the DOJ moved for partial summary judgment, asserting that its searches were reasonable, Def.'s Mem. at 3, that it properly applied FOIA Exemption 5 to withhold certain responsive records, id. at 6, and that all reasonably segregable material has been released to the plaintiff, id. at 12.  In accordance with Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), both the OIP and the Criminal Division have provided Vaughn indices and supporting declarations describing the records being withheld and the FOIA exemptions purportedly justifying the two DOJ components' withholdings.[3]  See Def.'s Mot., Exhibit ("Ex.") 1 (Declaration of Vanessa R. Brinkman ("OIP Decl.")); id., Ex. 2 (OIP Vaughn Index); id., Ex. 3 (Declaration of Kristin L. Ellis ("Crim. Div. Decl.")); id., Ex. 4 (Criminal Division's Vaughn Index ("Crim. Div. Vaughn Index")); Def.'s Reply, Ex. 2 (Supplemental Declaration of Kristin L. Ellis ("Supp. Crim. Div. Decl.")).[4]

The plaintiff filed its consolidated opposition to the DOJ's motion and cross-motion for partial summary judgment on July 18, 2011.  While not challenging the adequacy of the DOJ's search, Pl.'s Mem. at 1, the plaintiff contends that (i) the DOJ's Vaughn submissions fail to provide "the necessary specificity and contextual information to assess the propriety of the challenged withholdings"; (ii) the DOJ has "improperly withheld records under Exemption 5 containing information that 1) was shared with third parties; 2) for which the deliberative process privilege has been waived; 3) is not predecisional and deliberative; and 4) is purely factual in nature"; and (iii) the DOJ has "failed to demonstrate compliance with [the] FOIA's requirement that all reasonably segregable, non-exempt material be released," id. at 5.

---

[3] The Court, like the parties, refers to the DOJ components' Vaughn indices and supporting declarations collectively as the DOJ's "Vaughn submissions."

[4] Because the DOJ has not designated exhibit numbers for several of the exhibits submitted with its summary judgment motion, the Court has assigned exhibit numbers to the attachments in the order of their appearance on the electronic docket (e.g., attachment 1 on the electronic docket is designated as Exhibit 1).

The parties have engaged in ongoing efforts to narrow the scope of the records whose non-production is in dispute.  Pl.'s Reply at 1-2.  Nevertheless, as of September 19, 2011, the filing date of the plaintiff's reply brief, "nearly 650 pages of material related to the HLCG, withheld either in part or in their entirety under FOIA Exemption 5, remain at issue in this case."  Id. at 2.

## II.  STANDARDS OF REVIEW

### A.  Summary Judgment in a FOIA Action

Courts will grant a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "FOIA cases appropriately may be decided on motions for summary judgment."  Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007) (citations omitted).  When an agency seeking "summary judgment on the basis of . . . agency affidavits" asserts through those affidavits that it has properly withheld documents or parts of documents pursuant to a FOIA exemption, the agency's affidavits must "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).  Agency affidavits submitted in the FOIA context "are accorded a presumption of good faith."  SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

The "'burden is on the agency' to show that [the] requested material falls within a FOIA exemption."  Petroleum Info. Corp. v. Dep't of the Interior, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (quoting 5 U.S.C. § 552(a)(4)(B)).  Consistent with congressional intent tilting the scales

in favor of full disclosure, courts impose a substantial burden on an agency seeking to avoid

disclosure based on the FOIA exemptions.  See Morley v. CIA, 508 F.3d 1108, 1114 (D.C. Cir.

2007).  As a result, "exemptions from disclosure must be narrowly construed . . . and conclusory

and generalized allegations of exemptions are unacceptable."  Id. at 1114-15 (internal citation

and quotation marks omitted).  Nonetheless, "[w]hen disclosure touches upon certain areas

defined in the exemptions . . . [,] the [FOIA] recognizes limitations that compete with the general

interest in disclosure, and that, in appropriate cases, can overcome it."  Nat'l Archives & Records

Admin. v. Favish, 541 U.S. 157, 172 (2004).

**B.     Adequacy of Vaughn Index**

Because the agency in a FOIA case has "both the burden of proof and all the evidence,

the agency has the difficult obligation to justify its actions without compromising its original

withholdings by disclosing too much information."  Judicial Watch, Inc. v. FDA, 449 F.3d 141,

146 (D.C. Cir. 2006).  "The Vaughn index provides a way for the defending agency to do just

that.  By allowing the agency to provide descriptions of withheld documents, the index gives the

court and the challenging party a measure of access without exposing the withheld information."

Id.

While there is "no set formula" for evaluating the adequacy of a Vaughn index, Carter,

Fullerton & Hayes LLC v. FTC, 520 F. Supp. 2d 134, 142 (D.D.C. 2007), the Court must be

mindful of the Circuit's

> repeated instruction on the specificity required of a Vaughn index.  In King v.
> U.S. Department of Justice, 830 F.2d 210 (D.C. Cir. 1987), the court stated that
> "when an agency seeks to withhold information, it must provide 'a relatively
> detailed justification, specifically identifying the reasons why a particular
> exemption is relevant and correlating those claims with the particular part of a
> withheld document to which they apply,'" id. at 219 (quoting Mead Data Cent.,
> Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977)).  The court
> held that a "[c]ategorical description of redacted material coupled with categorical

> indication of anticipated consequences of disclosure is clearly inadequate." <u>Id.</u> at
> 224.  At the same time, in <u>Judicial Watch, Inc. v. Food & Drug Administration</u>,
> 449 F.3d 141, 147 (D.C. Cir. 2006), the court stated that "[w]e have never
> required repetitive, detailed explanations for each piece of withheld information—
> that is, codes and categories may be sufficiently particularized to carry the
> agency's burden of proof."  The court observed that "[e]specially where the
> agency has disclosed and withheld a large number of documents, . . . particularity
> may actually impede court review and undermine the functions served by a
> <u>Vaughn</u> index." <u>Id.</u>  In holding that the <u>Vaughn</u> index was adequate, the court
> noted the index included eleven categories of information describing the nature of
> each record. <u>Id.</u> at 146-47.

<u>Morley</u>, 508 F.3d at 1122-23.  Agencies are permitted to "submit other measures in combination

with or in lieu of the index itself," such as "supporting affidavits," so long as the materials "'give

the reviewing court a reasonable basis to evaluate the claim of privilege.'" <u>Judicial Watch</u>, 449

F.3d at 146 (quoting <u>Gallant v. NLRB</u>, 26 F.3d 168, 172-73 (D.C. Cir. 1994)).  Ultimately, the

Court's analysis must "focus on the functions of the <u>Vaughn</u> index, not the length of the

document descriptions." <u>Id.</u>

## C.      FOIA Exemption 5 and the Deliberative Process Privilege

The only FOIA Exemption at issue in this case is Exemption 5, which protects "inter-

agency or intra-agency memorandums or letters which would not be available by law to a party

other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  To be covered by

Exemption 5, a document's "source must be a Government agency, and it must fall within the

ambit of a privilege against discovery under judicial standards that would govern litigation

against the agency that holds it." <u>Dep't of Interior & Bureau of Indian Affairs v. Klamath Water</u>

<u>Users Protective Ass'n</u>, 532 U.S. 1, 8 (2001).  "[T]he parameters of Exemption 5 are determined

by reference to the protections available to litigants in civil discovery; if material is not

'available' in discovery, it may be withheld from FOIA requesters." <u>Burka v. Dep't of Health &</u>

<u>Human Servs.</u>, 87 F.3d 508, 516 (D.C. Cir. 1996).  Thus, Exemption 5 covers "'those

6

documents, and only those documents, normally privileged in the civil discovery context,' those privileges being: (1) the deliberative process privilege '(sometimes referred to as executive privilege)'; (2) the attorney-client privilege; and (3) the attorney work-product privilege." Citizens for Responsibility & Ethics in Washington v. Nat'l Archives & Records Admin., 715 F. Supp. 2d 134, 138 (D.D.C. 2010) (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 148-49 (1975)).

The DOJ here has invoked the deliberative process privilege. This privilege protects from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Sears, 421 U.S. at 150 (internal quotation marks omitted). Designed to promote "candid discussion within the agency" and to improve the decisionmaking process, Formaldehyde Inst. v. Dep't of Health & Human Servs., 889 F.2d 1118, 1122 (D.C. Cir. 1989) (internal quotation marks and citation omitted), the privilege ensures that government agencies are not "forced to operate in a fishbowl," Petroleum Info., 976 F.2d at 1434 (internal quotation marks and citation omitted). To qualify for protection under the deliberative process privilege, the agency must show that the document is both (1) predecisional and (2) deliberative. Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 39 (D.C. Cir. 2002). "A document is 'predecisional' if it precedes, in temporal sequence, the 'decision' to which it relates." Senate of Puerto Rico ex. rel. Judiciary Comm. v. United States, 823 F.2d 574, 585 (D.C. Cir. 1987). "Material is deliberative if it 'reflects the give-and-take of the consultative process.'" Petroleum Info., 976 F.2d at 1434 (quoting Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980)). The "key question" in determining whether the material is deliberative in nature "is whether disclosure of the information would 'discourage candid discussion within the agency.'" Access

<u>Reports v. Dep't of Justice</u>, 926 F.2d 1192, 1195 (D.C. Cir. 1991) (quoting <u>Dudman Commc'ns</u>

<u>Corp. v. Dep't of Air Force</u>, 815 F.2d 1565, 1567-68 (D.C. Cir. 1987)).

## III.  ANALYSIS

The Court begins its analysis by considering the plaintiff's challenges to the adequacy of

the DOJ's <u>Vaughn</u> submissions.  Because the Court ultimately agrees with the plaintiff that the

agency's <u>Vaughn</u> submissions are deficient in several respects, it does not (and indeed cannot)

reach the question of whether the DOJ has properly invoked the deliberative process privilege of

FOIA Exemption 5.  The Court further concludes that the DOJ has failed to provide a sufficient

segregability analysis.

**A.     Adequacy of the DOJ's <u>Vaughn</u> Submissions**

The plaintiff contends that the DOJ's <u>Vaughn</u> submissions are "classic examples" of the

kind of "vague" and "sweeping . . . <u>Vaughn</u> submissions that the D.C. Circuit has long rejected."

Pl.'s Mem. at 7.  Specifically, the plaintiff challenges the OIP's <u>Vaughn</u> index because it divides

237 pages of withheld material into "nine sub-groups" that "describe large swaths of withheld

information under a single, nonspecific description."  <u>Id.</u> at 7.  The plaintiff similarly attacks the

Criminal Division's <u>Vaughn</u> index for sweeping "large numbers of apparently disparate

documents" into "single, categorical descriptions."  <u>Id.</u>  In addition, the plaintiff maintains that

the DOJ's <u>Vaughn</u> submissions do not provide the contextual specificity necessary to support a

withholding under the deliberative process privilege.  <u>Id.</u> at 9.

The DOJ responds that the plaintiff "appears to have reviewed each component's

declaration and <u>Vaughn</u> index separately, when it should have reviewed them <u>in pari materia</u>."

Def.'s Reply at 4.  "Had [the plaintiff] viewed each component's documents as a package," the

DOJ argues, "it would have noted the sufficient level of specificity and context."  <u>Id.</u>  The DOJ

emphasizes that the components' declarations describe "each of the groups of the records in question, how the documents were similar in nature, and the nature for the withholdings." Id. at 3. And because "many of the documents in question consist of email traffic within and among the DOJ components and other federal agencies," it would have, in the DOJ's view, been "unnecessary and unduly burdensome to separate each of the documents in the [eleven] groups in [the] OIP's case, and the ten categories in the [Criminal Division's] case." Id.

The fact that each component has organized their withheld documents into categories does not render their Vaughn submissions per se inadequate. See Judicial Watch, 449 F.3d at 147 ("codes and categories may be sufficiently particularized to carry the agency's burden of proof . . . Especially where the agency has disclosed and withheld a large number of documents, categorization and repetition provide efficient vehicles by which a court can review withholdings that implicate the same exemption for similar reasons." (citation omitted)). Still, the categories employed by the agency must be "sufficiently particularized" to discharge the agency's Vaughn obligations. See id.

Regarding the structure of each DOJ components' Vaughn submissions, the OIP's Vaughn Index is divided into the following categories:

Group 1: Documents withheld in part pursuant to Exemption 5
    Group 1(a): E-mail messages in which issues raised in a meeting between the U.S. and E.U. are discussed among DOJ officials.
    Group 1(b): E-mail messages in which DOJ senior officials solicit and receive advice and discuss questions, developments, and potential ramifications, concerning the HLCG deliberations.
    Group 1(c): E-mail discussions pertaining to the development of drafts.
    Group 1(d): E-mail discussions pertaining to strategies, progress, and next steps regarding HLCG negotiations.
    Group 1(e): Briefing material.

Group 2: Documents withheld in full pursuant to Exemption 5.
    Group 2(a): Drafts.
    Group 2(b): Comments on drafts.

> Group 2(c): Briefing material.
> Group 2(d): Handwritten meeting notes.

Def.'s Mot, Ex. 2 (OIP <u>Vaughn</u> Index) at 1.  The Index entry for each of the foregoing categories provides a brief description of the withheld documents, <u>see id.</u>, Ex. 2 (OIP <u>Vaughn</u> Index) at 1-7, and the OIP's supporting declaration explains the basis for the component's invocation of the deliberative process privilege as to each category of withheld documents, <u>see id.</u>, Ex. 1 (OIP Decl.) ¶¶ 24-36.  The Criminal Division's <u>Vaughn</u> submissions are similarly configured.  Its <u>Vaughn</u> Index divides documents withheld pursuant to FOIA Exemption 5 into ten categories (Categories A through J).  <u>See id.</u>, Ex. 4 (Crim. Div. <u>Vaughn</u> Index) at 1-3.  The Criminal Division's supporting declaration labels these categories as follows: (A) "Draft Briefing Documents for Attorney General, Edits/Comments, and Related Discussions," (B) "Briefings/Advice for Senior Level DOJ Officials," (C) "Drafts of Formal Documents Describing HLCG Work, Edits/Comments, and Related Discussions," (D) "Draft Agendas and Related Discussions," (E) "Drafts of The Way Forward for the HLCG and Privacy Discussions with the EU," Edits/Comments, and Related Discussions," (F) "Various Types of Materials Related to an HLCG Workshop," (G) "Materials/Discussions About Language for the HLCG Principles," (H) "Discussions About Various HLCG Matters by U.S. Experts," (I) "Summaries of/Discussions About Meetings and Documents Potentially Impacting HLCG Deliberations," and (J) "Discussions About Negotiation of a Binding International Agreement on Data Protection/Privacy."  <u>Id.</u>, Ex. 3 (Crim. Div. Decl.) at 10-22.  The Index provides a broad description for each category, as well as a range of documents included within each category.  <u>Id.</u>, Ex. 4 (Crim. Div. <u>Vaughn</u> Index) at 1-3.  The Criminal Division's supporting declaration, like the OIP's, provides some additional details as to each category of withheld documents, and

describes the reasoning behind the component's invocation of the deliberative process privilege. See id., Ex. 3 (Crim. Div. Decl.) ¶¶ 32-86.

Upon close inspection, the Court finds that many of the descriptions provided in the DOJ components' Vaughn submissions are too vague for the Court to determine whether the components' properly applied the deliberative process privilege to the withheld documents. It bears emphasizing at the outset that "[t]he need to describe each withheld document when Exemption 5 is at issue is particularly acute because 'the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process.'" Animal Legal Defense Fund, Inc. v. Dep't of the Air Force, 44 F. Supp. 2d 295, 299 (D.D.C. 1999) (quoting Coastal States, 617 F.2d at 867). Thus, "to carry its burden, the agency must describe not only the contents of the document but also enough about its context, [i.e.,] the agency's decisionmaking process, to establish that it is a pre-decisional part thereof." Safecard Servs., 926 F.2d at 1204; see also Petroleum Info., 976 F.2d at 1434 ("[T]he first step" for a Court analyzing the applicability of the deliberative process privilege "is to examine the context in which the materials are used."). In addition to explaining the "function and significance of the document(s) in the agency's decisionmaking process," the agency must describe "the nature of the decisionmaking authority vested in the office or person issuing the disputed document(s), and the positions in the chain of command of the parties to the documents." Arthur Andersen & Co. v. IRS, 679 F.2d 254, 258 (D.C. Cir. 1982) (internal quotation marks and citation omitted)). "Without a sufficiently specific affidavit or Vaughn Index, a court cannot decide, one way or the other, a deliberative process privilege claim." Judicial Watch v. USPS, 297 F. Supp. 2d 252, 260 (D.D.C. 2004) (citation omitted). Applying these standards, the Court has identified four

recurring deficiencies with the DOJ components' <u>Vaughn</u> submissions that preclude meaningful review of the agency's claimed privilege.

First, in many instances, the DOJ components' <u>Vaughn</u> submissions fail to provide necessary contextual information about the particular decisionmaking processes to which the withheld documents contributed, and the role the withheld documents played in those processes. <u>See</u> <u>Hinckley v. United States</u>, 140 F.3d 277, 284 (D.C. Cir. 1998) ("'The agency must establish what deliberative process is involved, and the role played by the documents in issue in the course of that process.'" (quoting <u>Senate of Puerto Rico</u>, 823 F.2d at 585)).  Group 1(b) of the OIP's <u>Vaughn</u> Index is illustrative of these deficiencies.  This category encompasses e-mail messages spanning from July to October 2009, wherein "senior [DOJ] officials seek and receive advice, and discuss questions, developments, and potential ramifications with respect to the HLCG deliberations."  Def.'s Mot., Ex. 2 (OIP <u>Vaughn</u> Index) at 2.  The OIP's supporting declaration adds that the e-mails in Group 1(b) "consist of back and forth discussions, forwards, and spinoff discussions, in which [DOJ officials] exchange any thoughts, ideas, or guidance they deem appropriate regarding the U.S.[']s . . . negotiation position on HLCG matters.  These officials analyze and prepare for EU negotiating positions, and work amongst themselves to promote [DOJ] and U.S. foreign interests in these foreign negotiations."  <u>Id.</u>, Ex. 1 (OIP Decl.) ¶ 26.  The Court finds this description inadequate because it fails to identify a specific deliberative process to which the withheld email messages contributed.  Indeed, the OIP's vague references to "HLCG matters" and "deliberations" provides little context to the Court and the plaintiff, given that the HLCG negotiations occurred on various instances throughout 2008 and 2009.  <u>See</u> Def.'s Mot., Ex. 4 (Crim. Div. <u>Vaughn</u> Index) at 1-3.  Other entries in the OIP's <u>Vaughn</u> Index are likewise deficient.  Group 1(a), for example, covers three documents consisting of "[e]-mail

messages between David Ogden and Stuart Delery discussing issues raised by a meeting between

U.S. and EU representatives on HLCG information sharing principles." Def.'s Mot, Ex. 2 (OIP

Vaughn Index) at 2. The problem with the adequacy of this description is that it fails to describe

what role, if any, these particular e-mail messages played in the agency's deliberative processes.[5]

In fact, based on the description provided by the OIP, it is possible that the e-mail messages

simply summarize factual matters discussed during a prior meeting and thus do not constitute the

type of "deliberative" communications relating to "the formulation or exercise of agency policy-

oriented judgment" that the privilege is designed to protect. Petroleum Info., 976 F.2d at 1435

(emphasis in original); see also id. at 1434 ("[u]nder the deliberative process privilege, factual

information generally must be disclosed"). Without a more detailed Vaughn Index and

supporting declaration, the Court is unable to assess, one way or the other, the OIP's deliberative

process privilege claim.

    Although some of the Criminal Division's document descriptions provide sufficient

contextual detail, others suffer from the same problems as the OIP's submissions. An example

of an entry from the Criminal Division's Vaughn submissions with adequate contextual

information is Category F, which is labeled "Various Types of Materials Related to an HLCG

Workshop." Def.'s Mot., Ex. 3 (Crim. Div. Decl.) at 16. The Criminal Division's supporting

declaration gives the following description of Category F:

> U.S. and E.U. HLCG experts met on October 1, 2009, at a workshop to work on
> the redress principle.[6] U.S. HLCG experts exchanged e-mails discussing

---

[5] While the OIP's supporting declaration adequately explains the general role of e-mail in the DOJ's decisionmaking processes, see Def.'s Mot, Ex. 1 (OIP Decl.) ¶¶ 26-29, the Court needs to know how the particular withheld emails factored into the agency's deliberative process.

[6] The "redress principle" refers to the HLCG's proposal that "wherever an individual's privacy has been infringed or data protection rules have been violated with respect to that individual, that individual [should/shall] have, before an impartial competent authority, independent court or tribunal, an effective remedy and/or appropriate and effective (continued . . . )

preparations for the topics to be discussed at the workshop, and researched/compiled information data for their use during the workshop. OIA Associate Director Burrows attended that meeting as a U.S. HLCG expert and took notes. Additionally, the U.S. experts started drafting a joint statement for the HLCG to issue concerning the outcome of the redress workshop. CRM withheld the preparatory e-mails/materials, Mr. Burrows' personal notes, and a U.S. draft/working version of the joint statement, which contained handwritten edits.

Id., Ex. 3 (Crim. Div. Decl.) ¶ 61. From this description the Court can discern both the particular deliberative process involved (the United States government's work on the formulation of the redress principle), and the role that the withheld documents played in that deliberative process (preparation for, and memorialization of, matters related to the redress principle workshop). In contrast, Category B of the Criminal Division's Vaughn Index is demonstrative of an entry lacking the requisite degree of contextual specificity. Encompassing seven documents withheld in full, Category B is described as "U.S. HLCG discussions/recommendations about briefing/advising senior level [DOJ] officials, including the Attorney General, the Deputy Attorney General, and a Deputy Assistant Attorney General, about HLCG deliberations in preparation for various meetings." Id., Ex. 4 (Crim. Div. Vaughn Index) at 1. The Criminal Division's supporting declaration simply rephrases the wording used in the Vaughn Index to describe Category B, and provides a conclusory explanation for why the documents are "predecisional" and "deliberative." See id., Ex. 3 (Crim. Div. Decl.) ¶¶ 38-42. As with many of the OIP's categories of withholdings, the Criminal Division's Category B fails to illuminate the deliberative process to which the withheld documents contributed. Rather, it merely states that the withheld documents relate to "various meetings," without correlating each document to a particular meeting, or describing, even in vague terms, the subject matter of the meetings.

---

(. . . continued)
sanctions." Pl.'s Cross-Mot., Ex. 1 (Final Report by the E.U.-U.S. High Level Contact Group on Information Sharing and Privacy and Personal Data Protection) at 17 (alteration in original).

Second, both components' <u>Vaughn</u> submissions fail to provide sufficient detail as to the identities, positions, and job duties of the authors and recipients of the withheld documents. While the OIP's <u>Vaughn</u> Index specifies the names of several DOJ officials who participated in withheld e-mail conversations, <u>see</u> Def.'s Mot., Ex. 2 (OIP <u>Vaughn</u> Index) at 1-6, it provides no information concerning (1) the original sender(s) and recipient(s), (2) the nature of the decisionmaking authority vested in each e-mail participant, or (3) the e-mail participants' relative positions in the agency's chain-of-command.  Such contextual information is critical in assessing a deliberative process privilege claim.  <u>See</u> <u>Arthur Andersen</u>, 679 F.2d at 258; <u>Access Reports</u>, 926 F.2d at 1195 ("A document from a junior to a senior is likely to reflect his or her own subjective opinions . . . By contrast, one moving from senior to junior is far more likely to manifest decisionmaking authority and to be the denouement of the decisionmaking rather than part of its give-and-take." (citation omitted)).  The Criminal Division's <u>Vaughn</u> submissions are even more deficient in this respect: neither the component's <u>Vaughn</u> Index nor its supporting declaration specifies the names, titles, or positions of the authors or recipients of the documents, instead referring to the document participants generally as "U.S. HLCG  experts."  Def.'s Mot., Ex. 4 (Crim. Div. <u>Vaughn</u> Index) at 1-3.  Attempting to explain these omissions, a supplemental declaration provided by the Criminal Division states that there was "no specific 'chain-of-command' involved" in the HLCG's deliberations, and that the "U.S. HLCG experts worked collaboratively in an effort to reach consensus about the position the group would take during negotiations" with the DOJ's European Union counterparts.  Def.'s Reply, Ex. 2 (Supp. Crim. Div. Decl.) ¶ 3.  Nevertheless, even if the document participants worked as peers on the issues discussed in the withheld documents, their positions and the scope of their decisionmaking authority within the DOJ are factors relevant to the agency's deliberative process privilege claim.

Third, regarding the numerous withheld documents designated as "drafts" by the OIP and the Criminal Division, both components have failed to explain in sufficient detail "whether these drafts were (1) 'adopted formally or informally, as the agency position on an issue;' or (2) 'used by the agency in its dealings with the public.'" Judicial Watch, 297 F. Supp. 2d at 261 (quoting Arthur Andersen, 679 F.2d at 257-58). "Either will defeat a claim of privilege, for both actions involve the exposure of the withheld documents to third parties." Id.; see Coastal States, 617 F.2d at 866 ("[E]ven if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public."). And many of the "drafts" withheld by the DOJ are described as "talking points" and "briefing materials." See, e.g., Def.'s Mot., Ex. 2 (OIP Vaughn Index) at 6 (Group 2(c); withholding a "briefing book for the Attorney General, and draft talking points/briefing papers for upcoming meetings with EU member state dignitaries"); id., Ex. 4 (Crim. Div. Vaughn Index) at 1 (Category A; withholding "[d]rafts/working versions of briefing books/documents for the Attorney General for various high-level meetings.").[7] These document designations are significant because the "likelihood" that "briefing materials and talking points . . . have been relied upon or adopted as official positions after their preparation . . . is particularly high." Elec. Privacy Info. Ctr. v. DOJ, 511 F. Supp. 2d 56, 71 (D.D.C. 2007). Indeed, one need only look to the OIP's supporting declaration to see that the DOJ's "most senior officials rely heavily on the creation of such briefing materials so that they can be fully informed . . . [and] prepared to decide how best to present [the agency's] views to the [DOJ's] counterparts, to

---

[7] The DOJ has produced to the plaintiff at least five final versions of withheld drafts, and the plaintiff has withdrawn its challenges to those documents. Pl.'s Reply at 13. However, according to its reply brief, the plaintiff still challenges the drafts withheld under Group 2(c) of the OIP's Vaughn Index, and Category A of the Criminal Division's Vaughn Index. Id.

respond to inquiries and concerns, and to represent the U.S. government's interests in

negotiations."  Def.'s Mot., Ex. 1 (OIP Decl.) ¶ 32 (emphasis added).  In short, the DOJ's

Vaughn submissions fail to provide sufficient detail concerning the withheld "drafts" to facilitate

the Court's evaluation of the agency's deliberative process privilege claim as to these documents.

Cf. Judicial Watch, 297 F. Supp. 2d at 265-66 (deeming agency's description of withheld "draft

talking points" inadequate where the agency "identifie[d] nothing more specific about the

content of th[e] document, [did] not specify its place in a particular decisionmaking context, and

[did] not indicate whether, as a draft, the[] talking points were actually used in a communication

with the public.").

Fourth, the DOJ components' Vaughn submissions do not provide an adequate basis for

evaluating the plaintiff's claim that the agency waived the deliberative process privilege as to

certain documents.  Because FOIA Exemption 5 applies only to documents that are "inter-agency

or intra-agency," 5 U.S.C. § 552(b)(5), communications between agencies and outside parties

generally are not protected under Exemption 5, Ctr. for Int'l Envtl. Law v. U.S. Trade Rep., 237

F. Supp. 2d 17, 25 (D.D.C. 2002), subject to at least one exception, see McKinley v. Board of

Gov.'s of Fed. Reserve Sys., 647 F.3d 331, 336 (D.C. Cir. 2011) ("Under the consultant

corollary to Exemption 5 . . . we interpret 'intra-agency' to include agency records containing

comments solicited from nongovernmental parties." (some internal quotation marks and citation

omitted)).  As the plaintiff points out, Pl.'s Mem. at 14, another member of this Court held in a

previous case that agency documents or portions thereof that were produced by or shared with a

foreign government during treaty negotiations were not "inter-agency or intra-agency"

documents within the meaning of FOIA Exemption 5, Ctr. for Int'l Envtl. Law, 237 F. Supp. 2d

at 30.  Relying on this decision, the plaintiff claims that several withheld documents were likely

shared with the DOJ's European counterparts and that these documents do not qualify as "inter-agency or inter-agency" documents covered by Exemption 5. Pl.'s Mem. at 14. The plaintiff places particular emphasis on a document discussed in an e-mail exchange released to the plaintiff. Pl.'s Cross-Mot., Ex. 3 (February 2, 2009 E-mail Chain) at 1. In this e-mail exchange, a DOJ official attached a document titled "HLCG way forwardJan30.doc" and stated "[h]ere is the HLCG document as edited by DHS and DOS. We will have to clear with the delegation providing it to the Czechs." Id. The recipient, another DOJ official, then forwarded the e-mail to various recipients (whose positions are not clear to the Court) with the following instructions: "Please review and see if this revised proposal for the HLCG way forward can be 'cleared' for sharing with the EUers." Id. In response to the plaintiff's assertion that the DOJ may have released withheld documents to non-Executive Branch entities, the DOJ cites a section of the OIP's supporting declaration stating that "[a]ll of the responsive material[s] withheld from [the] plaintiff . . . were created and exchanged entirely within the Executive Branch." Def.'s Mot., Ex. 1 (OIP Decl.) ¶ 23. The DOJ also cites language from the Criminal Division's supporting declaration that refers specifically to the "way forward" document and maintains that "[d]rafts of this document were circulated among U.S. HLCG experts and were not distributed outside of the Executive Branch." Id., Ex. 3 (Crim. Div. Decl.) ¶ 58.

While the DOJ's declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents,'" SafeCard Servs., 926 F.2d at 1200 (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)), the plaintiff's contention concerning the DOJ's disclosure of withheld documents to non-Executive Branch parties is based not on mere speculation, but on the DOJ's own released e-mails. The Court finds that these e-mails cast doubt on the validity of

the DOJ's declarations, and the agency thus should provide further explanation regarding whether it shared with non-Executive Branch entities the responsive documents that it withheld from the plaintiff.  To be clear, the Court at this stage is not holding that the DOJ waived the deliberative process privilege as to any withheld documents, nor is it expressing any opinion as to the burden of proof for establishing such a waiver.  See Def.'s Reply at 7-8 (arguing that the plaintiff has the burden of proving that a waiver has occurred, and that the plaintiff's claim of waiver here is based on "[m]ere speculation").  All the Court is saying is that the DOJ's Vaughn submissions do not provide a sufficient basis for evaluating the plaintiff's assertion that the agency improperly withheld documents that do not qualify as "inter-agency or intra-agency" materials under FOIA Exemption 5.[8]

In addition to arguing that the deliberative process privilege has been waived as to particular documents withheld by the DOJ components, the plaintiff contends that the agency waived the privilege as to the information in those withheld documents that was disclosed to the DOJ's European counterparts during the HLCG negotiations.  Pl.'s Mem. at 16-18.  Specifically, the plaintiff maintains that the DOJ waived the privilege as to "information describing meetings, discussions[,] or negotiations with EU participants in the HLCG process," as well as information disclosed to "outside parties during those meetings, discussions[,] or negotiations."  Id. at 17-18; see, e.g., Def.'s Mot., Ex. 3 (Crim. Div. Decl.) ¶ 71 (Category H; withholding e-mails discussing, among other things, "issues raised by the E.U. during deliberations," "responses by the E.U. to ideas presented by the United States," and "arguments made by the E.U. regarding remaining action items"); id., Ex. 3 (Crim. Div. Decl.) ¶ 76 (Category I; withholding documents in which

---

[8] The Criminal Division's supplemental declaration  does indicate that it produced to the plaintiff certain documents that were e-mailed to European Union HLCG experts, and that it otherwise did not locate versions of documents "shared with the E.U. (even in draft form)."  Def.'s Reply, Ex. 2 (Supp. Crim. Div. Decl.) ¶¶ 6-7.  Although helpful, this is far from a comprehensive list of documents that were, in fact, shared with the European Union.

"U.S. HLCG experts summarized several meetings between the U.S. and E.U."). Here again, the Court is unable to address the merits of the plaintiff's waiver challenge because the DOJ components' <u>Vaughn</u> submissions, as presently configured, fail to describe which documents contain information that was shared with entities outside the Executive Branch.

In sum, the Court concludes "not that the documents are not exempt as a matter of law, but that the agency has failed to supply" in its <u>Vaughn</u> submissions "the minimal information necessary to make a determination" concerning applicability of the deliberative process privilege. <u>Coastal States</u>, 617 F.2d at 861. Because the Court deems the DOJ's <u>Vaughn</u> submissions inadequate, summary judgment as to this issue is granted in the plaintiff's favor. The Court, accordingly, will not proceed to address whether the DOJ has properly applied the deliberative process privilege to the withheld documents, there being no adequate basis upon which the Court could make such a determination.

**B.      Segregability**

Under the FOIA, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). "It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." <u>Mead Data Cent., Inc. v. U.S. Dep't of Air Force</u>, 566 F.2d 242, 260 (D.C. Cir. 1977). So important is this requirement that "[b]efore approving the application of a FOIA exemption, the district court <u>must</u> make specific findings of segregability regarding the documents to be withheld." <u>Sussman v. U.S. Marshals Serv.</u>, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (emphasis added and citations omitted). The DOJ bears the burden of showing that no such segregable information exists, <u>Army Times Pub'lg Co. v. Dep't of Air Force</u>, 998 F.2d 1067, 1071 (D.C. Cir. 1993), and "must provide a

'detailed justification' for its non-segregability," <u>Johnson v. Exec. Office for U.S. Attorneys</u>, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting <u>Mead Data</u>, 566 F.2d at 261).

The plaintiff challenges the DOJ's withholding in full of 387 pages of responsive documents. Pl.'s Reply at 2 n.1. Seeking to justify these withholdings, the OIP's supporting declaration states that the component "carefully reviewed each of the documents to determine whether any information could be segregated for release," and while a "significant amount of material was determined to be appropriate for release in part," the component found that "all of the remaining information withheld from the plaintiff is protected by the deliberative process privilege." Def.'s Mot., Ex. 1 (OIP Decl.) ¶ 37. The declaration adds that "disclosure of any more information in these documents would reveal draft language and individual assessments of what was deemed significant in the course of the HLCG negotiations, what strategies and options were being considered, when and by who." <u>Id.</u> The Criminal Division's supplemental declaration likewise maintains that the component "segregated and released information from many documents (primarily e-mail exchanges), but determined that some records were wholly deliberative (e.g., draft/working versions of documents) and could not be released. To the extent that the information withheld in whole or in part included any factual information, [the Criminal Division] concluded that it was inextricably intertwined with privileged deliberative information." Def.'s Reply, Ex. 2 (Supp. Crim. Div. Decl.) ¶ 4. By way of example, the declaration states that "although draft/working versions of documents may have contained factual statements, [the Criminal Division] concluded that such facts were not reasonably segregable because officials were making edits and deletions to the documents, which itself reflects the Government's deliberations about what the documents should say and how they should say it." <u>Id.</u> As for withheld e-mail exchanges, the Criminal Division found that "any

factual information not otherwise released to [the] plaintiff either prompted reactions, opinions

or recommendations from employees, or was otherwise so closely related to those reactions,

opinions, and/or recommendations that disclosure of the facts would expose the employees'

protected deliberations."  Id.  Finally, regarding those documents withheld in full, the Criminal

Division asserts that "these records largely were either internal briefing materials or

draft/working versions of documents that were wholly deliberative," and that the documents "did

not contain any non-exempt, non-deliberative material that could be released to the plaintiff or,

to the extent any non-exempt information existed, that such information, once segregated, would

be nothing more than random words and phrases lacking any meaning, which agencies are not

obligated to segregate and disclose."  Def.'s Mot., Ex. 3 (Crim. Div. Decl.) ¶ 23.

Upon consideration of the DOJ's justifications, and given the number of redacted

documents that it has produced to the plaintiff, the Court does not doubt that the DOJ has

conducted a segregability analysis of responsive documents.  Nevertheless, the Court believes

that the DOJ can provide a more comprehensive description as to the various documents

withheld in full.[9]  The agency should, for example, "describe what proportion of the information

in [the] document[s]," if any, "is non-exempt and how that material is dispersed throughout the

document[s]."  Mead Data Cent., 566 F.2d at 261.  As it stands now, the DOJ's description of its

segregation efforts is too categorical for the Court to evaluate whether any factual material in the

documents withheld in full is "inextricably intertwined" with the deliberative material such that

the agency can permissibly withhold the documents in their entirety.[10]  Johnson, 310 F.3d at 776.

---

[9] The Court refers here to documents withheld in full, not pages, deferring to the DOJ's judgment as to what
constitutes a distinct "document" for the purposes of constructing its Vaughn submissions.

[10] The plaintiff points to at least one example, document number CRM-000761, where text appearing under the
heading "Background" has been redacted in full.  Pl.'s Cross-Mot., Ex. 6 (CRM-000761) at 1.  This text could, on
the one hand, be purely factual "background" information not subject to protection under the deliberative process
(continued . . . )

**C.      Resolution: Revised <u>Vaughn</u> Submissions**

Having found the DOJ's <u>Vaughn</u> submissions inadequate, the Court has several options

regarding how to now proceed in this case.  <u>See</u> <u>Spirko v. USPS</u>, 147 F.3d 992, 997 (D.C. Cir.

1998) ("If the agency fails to provide a sufficiently detailed explanation to enable the district

court to make a <u>de</u> <u>novo</u> determination of the agency's claims of exemption, the district court

then has several options, including inspecting the documents <u>in</u> <u>camera</u>, requesting further

affidavits, or allowing the plaintiff discovery.").  Because "a district court should not undertake

<u>in</u> <u>camera</u> review of withheld documents as a substitute for requiring an agency's explanation of

its claimed exemptions in accordance with <u>Vaughn</u>," <u>id.</u>, the Court finds that the best approach is

to direct the agency to revise their <u>Vaughn</u> submissions, taking into account the deficiencies

identified by the Court.

The Court notes that the DOJ's revised <u>Vaughn</u> submissions must be adequately detailed

such that both the Court and the plaintiff can conduct their own reviews of the applicability of

the privileges to specific documents.  Unless the agency can formulate "sufficiently

particularized" categories in its revised <u>Vaughn</u> submissions, <u>Judicial Watch</u>, 449 F.3d at 147,

providing document-by-document descriptions is the safest (though admittedly not the least

burdensome) way for the DOJ to discharge its duties under <u>Vaughn</u>.  Such an approach would

allow the Court and the plaintiff to match the details of each document "to each element of every

privilege that applies to a particular document." <u>Judicial Watch</u>, 297 F. Supp. 2d at 270.  The

revised <u>Vaughn</u> submissions should also provide "information on any other potentially

dispositive issues identified by the court (e.g., waiver of privilege because documents were

---

(. . . continued)
privilege.  On the other hand, the redacted text could be deliberative information falling squarely within the ambit of the privilege.  The Court is simply unable to make this assessment, thus confirming the necessity of a more thorough segregability analysis.

adopted as final policy or because they were released to third parties)." Id. at 271.  Lastly, the revised Vaughn submissions should include a segregability analysis for each document withheld in full, "identifying the proportion of privileged and non-privileged information," and explaining "specifically why the documents cannot be redacted and produced."  Id.  And the DOJ should, of course, disclose to the plaintiff redacted versions of any documents that it determines contain reasonably segregable privileged material.

## IV.  CONCLUSION

For the foregoing reasons, the Court concludes that the DOJ's Vaughn submissions are inadequate, and that the agency has not provided a sufficient segregability analysis. Accordingly, the DOJ's motion for partial summary judgment must be denied without prejudice, and the plaintiff's cross-motion for partial summary judgment must be granted insofar as it challenges the adequacy of the DOJ's Vaughn submissions and the agency's segregability analysis, and otherwise denied without prejudice.  The defendant is directed to submit revised Vaughn submissions taking into account the deficiencies identified by the Court, along with a renewed motion for partial summary judgment, on or before February 1, 2012.  In response thereto, the plaintiff shall file a renewed cross-motion for partial summary judgment on or before February 29, 2012.

**SO ORDERED** this 30th day of November, 2011.[11]

REGGIE B. WALTON
United States District Judge

---

[11] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.