**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
ELECTRONIC FRONTIER                     )
FOUNDATION,                             )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )      Civil Action No. 10-641 (RBW)
                                        )
UNITED STATES DEPARTMENT OF             )
JUSTICE,                                )
                                        )
            Defendant.                  )
_____)

## MEMORANDUM OPINION

The plaintiff, Electronic Frontier Foundation, brings this action against the United States

Department of Justice ("DOJ") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552 (2006), seeking the release of records concerning "discussions and negotiations between

the United States and the European Union with respect to the international exchange of personal

information for use by law enforcement authorities."  Complaint ("Compl.") ¶ 1.  Currently

before the Court are the parties' renewed cross-motions for partial summary judgment.  Upon

careful consideration of the parties' submissions,[1] the Court concludes for the following reasons

that it must grant the DOJ's motion in part and deny it in part without prejudice, and deny the

plaintiff's motion.

_____
[1]  The Court considered the following filings and their supporting exhibits in resolving the parties' cross-motions:
the Defendant's Renewed Motion for Partial Summary Judgment ("Def.'s Mot."); the defendant's Supplemental
Statement of Material Facts Not in Genuine Dispute ("Def.'s Facts"); the Memorandum in Opposition to
Defendant's Renewed Motion for Partial Summary Judgment and in Support of Plaintiff's Cross-Motion for Partial
Summary Judgment ("Pl.'s Mem."); the Plaintiff's Supplemental Statement of Material Facts Not in Dispute and
Response to Defendant's Supplemental Statement of Facts Not in Dispute; the Reply in Support of Defendant's
Renewed Motion for Partial Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment
("Def.'s Reply"); and the Reply Memorandum in Support of Plaintiff's Second Motion for Partial Summary
Judgment ("Pl.'s Reply").

# I. BACKGROUND

## A.     Facts

The following facts are not in dispute.  In November 2006, the United States and the European Union ("E.U.") agreed to negotiate a set of common principles concerning the protection of personal information in the trans-national law enforcement context.  Def.'s Facts ¶ 1; Compl. ¶ 5.  To pursue that goal, they created the United States-European Union High Level Contact Group ("HLCG").  Def.'s Facts ¶ 1.  The HLCG negotiations consisted of two levels of deliberations involving the United States: (1) internal deliberations among United States government officials and employees concerning the United States's negotiation position; and (2) external deliberations with E.U. officials concerning common data protection principles.  Id. ¶ 2.  No single United States official exercised ultimate decisionmaking responsibility or authority over the HLCG deliberations.  Id.  Rather, the negotiations were carried out by an inter-agency group of experts from the DOJ, the United States Department of Homeland Security ("DHS"), and the United States Department of State ("State Department").  Id. ¶ 3.

In March 2008, "[m]ost of the [HLCG] principles were completed," and the HLCG reported their progress at a meeting attended by the Attorney General, the Secretary of Homeland Security, and their E.U. counterparts (collectively, the "ministers') in Brdo, Slovenia.  Id. ¶ 7.  The ministers agreed that the HLCG's work should continue, particularly on the issue of "redress."[2]  Id.  Consequently, the HLCG experts continued to meet by video conference or in person for approximately another 18 months.  Id.  "The United States continued to consider various proposals [from the E.U.] and reached a consensus on how to respond to each."  Id.

---

[2] "The redress principle concerns an individual's right to [an] effective remedy in the event of their privacy being infringed or violated."  Def.'s Mot., Supplemental Declaration of Vanessa R. Brinkmann ("Office of Information Policy ("OIP") Decl.") at 4 n.2.

"The [United States] and E.U. experts also held a seminar on the issue of redress in early October 2009[,] and continued [their] negotiations thereafter." Id.

The negotiating positions of the United States were developed in meetings, emails, and telephone calls among the HLCG experts, as well as during occasional discussions with senior policy officials at the DHS, DOJ, and State Department. Id. ¶ 6. Because the proposed provisions on data protection had to be accepted by all three agencies, the United States's positions were reached by consensus. Id. Thus, the DOJ and DHS each drafted proposed provisions, which were then the subject of discussion within the United States team of negotiators. Id. The representatives from the E.U. also drafted some of the proposals and counter-proposals. Id.

Once the HLCG principles were completed, they were formally presented to, and accepted by, the ministers at the "US-EU Justice and Home Affairs Ministerial Troika on October 28, 2009." Def.'s Mot., OIP Decl. ¶ 9. The ministers also decided at the October 28, 2009 Ministerial Troika to begin work immediately on a binding international agreement between the United States and the E.U. on privacy and the protection of personal data in the law enforcement context. Def.'s Facts ¶ 8. Negotiations on this issue began in March 2011, and were ongoing as of the filing date of the DOJ's reply brief in this case on April 12, 2012. Def.'s Reply at 5.

**B.      Procedural Background**

By letter dated November 6, 2009, the plaintiff submitted a FOIA request to the DOJ seeking "all DOJ records created since January 20, 2009[,] that concern, discuss[,] or reflect the work or deliberations of the HLCG." Compl. ¶ 5. After receiving no records from the DOJ, the plaintiff instituted this action on April 26, 2010. Id. ¶ 11.

The parties then filed cross-motions for partial summary judgment.  By Memorandum Opinion and Order dated November 30, 2011, the Court denied the DOJ's motion without prejudice, and granted the plaintiff's motion "insofar as it challenge[d] the adequacy of the DOJ's Vaughn submissions and the agency's segregability analysis," but otherwise denied it without prejudice.[3]  Elec. Frontier Found. v. DOJ, 826 F. Supp. 2d 157, 175 (D.D.C. 2011). Specifically, the Court found that the DOJ's Vaughn submissions were "too vague for the Court to determine whether the [DOJ] components' properly applied the deliberative process privilege to the withheld documents," id. at 167, and that the DOJ's "description of its segregation efforts [was] too categorical for the Court to evaluate whether any factual material in the documents withheld in full is 'inextricably intertwined' with deliberative material such that the agency can permissibly withhold the documents in their entirety," id. at 174 (quoting Johnson v. Exec. Office for U.S. Attorneys, 310 F.3d 771, 776 (D.C. Cir. 2002)).  The Court thus directed the DOJ "to submit revised Vaughn submissions" and "a renewed motion for partial summary judgment," which took "into account the deficiencies identified by the Court."  Id. at 175.

The DOJ has now submitted a renewed motion for partial summary judgment along with revised Vaughn submissions, which it claims are sufficiently detailed to demonstrate that it is entitled to withhold documents from the plaintiff pursuant to the deliberative process privilege of FOIA Exemption 5.  See Def.'s Mot. at 5-26.  In response, the plaintiff has submitted a cross-motion for partial summary judgment.  Shifting the focus from the adequacy of the DOJ's

---

[3] The Court, like the parties, refers on some occasions to the DOJ's Vaughn indices and supporting declarations collectively as the DOJ's "Vaughn submissions."  See Def.'s Mot., OIP Decl.; Def.'s Mot., Second Supplemental Declaration of Kristin L. Ellis ("Crim. Div. Decl."); Def.'s Mot., OIP Vaughn Index; Criminal Division's 2nd Supplemental Vaughn Index ("Crim. Div. Vaughn Index"); Def.'s Mot., Declaration of Thomas Burrows ("Office of Internal Affairs ("OIA") Decl.").

<u>Vaughn</u> submissions, the plaintiff now challenges the DOJ's invocation of the deliberative process privilege, as well as its segregability analysis.  <u>See</u> Pl.'s Mem. at 3-23.

As matters currently stand, the DOJ estimates that 178 pages of documents remain in controversy.  Def.'s Reply at 2 n.3.  The plaintiff disputes this figure, maintaining that approximately 490 pages of documents remain in dispute.  Pl.'s Reply at 4 n.2.

## II.  STANDARD OF REVIEW

"FOIA cases typically and appropriately are decided on motions for summary judgment."  <u>Defenders of Wildlife v. U.S. Border Patrol</u>, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (collecting cases).  Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he agency bears the burden of showing that there is no genuine issue of material fact, even when the underlying facts are viewed in the light most favorable to the requester."  <u>Weisberg v. DOJ</u>, 705 F.2d 1344, 1350 (D.C. Cir. 1983).  To satisfy this burden, the agency may rely upon affidavits, declarations, and other exhibits which describe the requested documents and "'the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record []or by evidence of agency bad faith.'" <u>Larson v. Dep't of State</u>, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting <u>Miller v. Casey</u>, 730 F.2d 773, 776 (D.C. Cir. 1984)).  Agency affidavits submitted in the FOIA context are "accorded a presumption of good faith."  <u>SafeCard Servs., Inc. v. SEC</u>, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

The "'burden is on the agency' to show that [the] requested material falls within a FOIA exemption."  <u>Petroleum Info. Corp. v. Dep't of Interior</u>, 976 F.2d 1429, 1433 (D.C. Cir. 1992)

(quoting 5 U.S.C. § 552(a)(4)(B)).  Consistent with congressional intent tilting the scales in favor

of full disclosure, the District of Columbia Circuit has instructed that "exemptions from

disclosure must be narrowly construed . . . and conclusory and generalized allegations of

exemptions are unacceptable."  Morley v. CIA, 508 F.3d 1108, 1114-15 (D.C. Cir. 2007)

(internal citation and quotation marks omitted).  Nevertheless, "[w]hen disclosure touches upon

certain areas defined in the exemptions . . . , the [FOIA] recognizes limitations that compete with

the general interest in disclosure, and that, in appropriate cases, can overcome it."  Nat'l

Archives & Records Admin. v. Favish, 541 U.S. 157, 172 (2004).

### III.  ANALYSIS

**A.      FOIA Exemption 5 and the Deliberative Process Privilege**

The DOJ has invoked FOIA Exemption 5, which "allows an agency to withhold

disclosure of a record if the record meets two requirements: (1) it is an 'inter-agency or intra-

agency memorandum[] or letter[]' that (2) 'would not be available by law to a party other than an

agency in litigation with the agency.'"  McKinley v. Bd. of Govs. of Fed. Reserve Sys., 647 F.3d

331, 335-36 (D.C. Cir. 2011) (quoting 5 U.S.C. § 552(b)(5)).  The Court will address these

requirements in turn.

**1.      Inter-Agency or Intra-Agency Memoranda**

For a document to satisfy the first requirement of Exemption 5, its "source must be a

Government agency."  Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8

(2001).  According to the Vaughn submissions submitted by two DOJ components—the Office

of Information Policy ("OIP") and the Criminal Division—the documents currently in dispute

were only exchanged between agency officials within the Executive Branch.  See Def.'s Mot.,

OIP Decl. ¶ 18 ("There is no indication—either based on the face of the documents themselves

or on the . . . []search conducted by OIP staff—that the documents or information withheld by [the] OIP were shared outside of the Executive Branch."); Def.'s Mot., Crim. Div. Decl. ¶¶ 16, 22, 28, 33, 38, 43, 48, 53, 58, 63 (same).  Although the OIP did locate some documents "that were exchanged between the United States HLCG members and their E.U. counterparts," its declaration explains that "OIP has referred such material to the Departments of State and Homeland Security for processing and direct response to [the] plaintiff."  Def.'s Mot., OIP Decl. ¶ 20.  Consequently, this "material is not currently under review by the Court."  Id.; see also Def.'s Reply at 2 (contending that the "[p]laintiff's conjectures about documents allegedly shared with E.U. officials are not the subject of the current motions practice because any such documents would have been referred to the U.S. Departments of State and Homeland Security for a direct response to [the] plaintiff").  Because the plaintiff has offered no contrary evidence rebutting the agency's Vaughn submissions,[4] the Court concludes that the documents currently in dispute qualify as "inter-agency or intra-agency" records within the meaning of FOIA Exemption 5.

  **2.**  **The Deliberative Process Privilege**

  "To satisfy the second requirement of Exemption 5, the record must be non-disclosable 'under one of the established civil discovery privileges,'" one of which is "'the deliberative process privilege.'"  McKinley, 647 F.3d at 339 (citation omitted).  "'To qualify for Exemption 5 protection under the deliberative process privilege, an agency's materials must be both [1] predecisional and [2] a part of the deliberative process.'"  Id. (citation omitted).  "[A] document

---

[4] While the plaintiff apparently does not dispute that "the documents themselves . . . [were] solely disseminated within the Executive Branch," it contends that "much of the information contained within the withheld records has likely been disclosed to the E.U. negotiators in the course of the [HLCG] negotiations," and that the DOJ has consequently waived the deliberative process privilege as to this information.  Pl.'s Mem. at 11 (emphasis in original).  The Court will address this waiver argument infra at pages 12-14.

[is] predecisional if 'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the consultative process.'" Judicial Watch, Inc. v. FDA, 449 F.3d 141, 151 (D.C. Cir. 2006) (quoting Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980)).  Designed to promote "candid discussion within the agency" and to improve the decisionmaking process, Formaldehyde Inst. v. HHS, 889 F.2d 1118, 1122 (D.C. Cir. 1989) (internal quotation marks and citation omitted), the privilege ensures that government agencies are not "forced to operate in a fishbowl," Petroleum Info., 976 F.2d at 1434 (internal quotation marks and citation omitted).  To that end, documents qualify for protection under the privilege "only if they 'reflect[] advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated, [or] the personal opinions of the writer prior to the agency's adoption of a policy.'" Pub. Citizen, Inc. v. OMB, 598 F.3d 865, 875 (D.C. Cir. 2010) (citation omitted); accord NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975).  Ultimately, "'the key question'" for the Court is "'whether the disclosure of materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'" Horowitz v. Peace Corps, 428 F.3d 271, 276 (D.C. Cir. 2005) (quoting Dudman Commc'ns Corp. v. Dep't of Air Force, 815 F.2d 1565, 1568 (D.C. Cir. 1987)).

   In seeking to establish that its withholdings were "predecisional" and "deliberative," the OIP's Vaughn submissions state that "the entirety of the information withheld by [the] OIP consists of records created during the negotiations over the redress principle" in anticipation of several HLCG meetings, including an April 2009 Ministerial Troika, an early October 2009 workshop and HLCG meeting, and an October 2009 Ministerial Troika.  See Def.'s Mot., OIP

Decl. ¶¶ 11, 15; Def.'s Mot., OIP <u>Vaughn</u> Index at 2-13.  The Criminal Division's <u>Vaughn</u> submissions similarly maintain that its withholdings were "predecisional" because they predated the particular HLCG meetings and decisions to which they related, <u>see</u> Def.'s Mot., Crim. Div. Decl. ¶¶ 17, 23, 29, 34, 39, 44, 49, 54, 59, 64; Def.'s Mot., Crim. Div. <u>Vaughn</u> Index at 3-49, and were "deliberative" insofar as they reflect the

> multiple debates and decisions about what positions [the] DOJ would advocate or oppose [during the HLCG negotiations]; how to achieve consensus regarding those positions among the U.S. stakeholders ([the] DOJ and the Departments of State and Homeland Security); how to go about negotiations with the E.U. on common data protection principles; and whether, where, and how to [begin] the process of reaching a binding international agreement with the E.U. on data protection in the law enforcement context.  The entirety of this process comprises the [DOJ's] "deliberative process," which [the Criminal Division] seeks to protect.

Def.'s Mot., Crim. Div. Decl. ¶ 13.  The DOJ deemed it "necessary to withhold this information not only to ensure candid discussion in future deliberations within the agency generally, but also to ensure that those U.S. officials/employees who are currently negotiating the <u>binding</u> international agreement with the E.U. feel free to candidly express their thoughts, opinions, and recommendations during internal discussions, without fear that their communications will be publicly disclosed."  <u>Id.</u> ¶ 12 (emphasis added).

In response to the DOJ's claim of privilege, the plaintiff challenges "three discernible categories of information" withheld by the DOJ: (1) "information [which] represents a final position of the U.S. HLCG negotiations or, at least, describes positions that were shared or disseminated outside the agency;" (2) "factual information summarizing negotiations or describing proposals of [E.U.] HLCG negotiators;" and (3) "briefing materials that are neither 'predecisional' nor 'deliberative' within the meaning of Exemption 5."  Pl.'s Mem. at 10.  The Court will address each of the plaintiff's challenges in turn.

**i.** **The DOJ's Alleged Withholding of Information that Reflects the United States HLCG Experts' Final Negotiating Positions**

The plaintiff first asserts that many of the records withheld by the DOJ are not protected by the deliberative process privilege because they likely contain information that became the final positions of the United States during the HLCG negotiations.  See Pl.'s Mem. 10-16.  In advancing this argument, the plaintiff relies on the well-recognized principle in this Circuit that "even if [a] document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public."  Coastal States, 617 F.2d at 866; see also Sears, 421 U.S. at 161 ("[I]f an agency chooses expressly to adopt or incorporate by reference an intra-agency memorandum previously covered by Exemption 5 in what would otherwise be a final opinion, that memorandum" cannot be withheld under Exemption 5.).

In determining "[w]hether a document has in fact been 'adopted' by an agency," the Court must examine "the function and significance of the document in the agency's decisionmaking process."  Pub. Emps. for Envt'l Responsibility v. U.S. Section Int'l Boundary & Water Comm'n, 839 F. Supp. 2d 304, 322 (D.D.C. 2012).  "This type of determination is necessarily fact-dependent, but it is also driven by a 'strong theme' in this circuit's opinions [recognizing] that an 'agency will not be permitted to develop a body of secret law, used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege because it is not designated as formal, binding, or final.'"  Id. at 322-23 (quoting Coastal States, 617 F.2d at 867).  Indeed, the "[c]ases that have addressed whether an agency informally adopted a predecisional document generally have focused on whether the documents are used by an agency as secret law or working law."  Sec. Fin. Life Ins. v. Dep't of Treasury, No. 03-cv-102, 2005 WL 839543, at *7 (D.D.C. April 12, 2005) (citing Tax Analysts v. IRS, 294

F.3d 71, 81 (D.C. Cir. 2002); Taxation with Representation Fund v. IRS, 646 F.2d 666, 678

(D.C. Cir. 1981); Coastal States, 617 F.2d at 867-68); accord United States v. Philip Morris

USA, Inc., 218 F.R.D. 312, 320 (D.D.C. 2003) ("The analysis of 'informal adoption' in the

existing caselaw turns on whether or not documents from line agencies constituted 'working

law.'").

Even assuming that the plaintiff is correct in asserting that the withheld information

reflects the United States HLCG experts' final negotiating positions, the Court finds its reliance

on the "agency adoption" line of cases to be misplaced.  To begin with, there is no indication that

the agencies that participated in the HLCG negotiations (i.e., the DOJ, DHS, and State

Department) formally or expressly adopted the United States HLCG experts' negotiating

positions in any publicly-available document or publication, nor does the plaintiff contend that is

the case.  And regarding informal adoption, this is not a case where the withheld information

sought by the plaintiff was used as the agencies' "working law" or "secret law."  Compare, for

example, the facts of this case to those in Coastal States, where the Department of Energy

withheld pursuant to the deliberative process privilege "memoranda from regional counsel to

auditors working in [the agency's] field offices, issued in response to requests for interpretations

of regulations within the context of particular facts encountered while conducting an audit of a

firm." 617 F.2d at 858.  In rejecting the agency's assertion of privilege as to these documents,

the Circuit reasoned:

> The evidence strongly supports the district court's conclusion that, in fact, these
> opinions were routinely used by agency staff as guidance in conducting their
> audits, and were retained and referred to as precedent.  If this occurs, the agency
> has promulgated a body of secret law which it is actually applying in its dealings
> with the public but which it is attempting to protect behind a label.  This we will
> not permit the agency to do. . . . These documents, whatever the formal powers of
> regional counsel to issue binding interpretations of the regulations, in practice
> represent interpretations of established policy on which the agency relies in

discharging its regulatory responsibilities; withholding them would serve no legitimate policy interest of the government

Id. at 869.

Here, the plaintiff "only seeks access to . . . information [conveying] the . . . negotiating positions taken by the U.S. HLCG officials . . . that were disclosed to the E.U."  Pl.'s Mem. at 15.  These "negotiating positions," moreover, related to the non-binding HLCG principles.  See Def.'s Facts ¶ 5 (noting that the HLCG "principles are not legally binding").  Information concerning the United States's negotiating position on a set of non-binding principles is not comparable to the documents withheld in Coastal States, which consisted of internal memoranda that the agency used as precedential guidance in discharging its regulatory duties.  While the latter category of documents implicates the concern that the agency has "promulgated a body of secret law which it is actually applying in its dealings with the public," Coastal States, 617 F.2d at 869, the former category does not.  The Court therefore views as unpersuasive the plaintiff's challenge to the DOJ's claim of privilege on the ground that the information contained in the withheld documents was formally or informally adopted by the agencies.[5]

### ii.    Waiver

The Circuit has recognized that "voluntary disclosure of privileged material . . . to unnecessary third parties . . . waives the [deliberative process] privilege . . . . for the document or information specifically released," although such disclosure does not waive the privilege "for related materials."  In re Sealed Case, 121 F.3d 729, 741 (D.C. Cir. 1997) (internal quotation marks and citations omitted).  Relying on this principle, the plaintiff argues that "given the

---

[5] Insofar as the plaintiff may be arguing that the withheld information lost its protected status because it was used by the United States HLCG team "in its dealings with the public," Coastal States, 617 F.2d at 866, that position must likewise be rejected.  The E.U. HLCG negotiators do not qualify as "the public," nor is there any indication that the withheld information was utilized by the agencies in their dealings with the public at large.  Indeed, the reason the plaintiff filed this action in the first instance is because the "HLCG negotiations were not carried out publicly."  Pl.'s Mem. at 13 (emphasis added).

subject of the FOIA request at issue and the nature of the bilateral [HLCG] negotiations in general, it stands to reason that significant amounts of information contained within the records withheld from [the plaintiff] were disclosed to [the] DOJ's EU counterparts during the course of negotiations." Pl.'s Mem. at 12.  The plaintiff further contends that it is the DOJ's burden to explain whether information in the withheld records "has been disclosed to a third party," and that it "is not enough [for the agency] to say that the records, themselves, have not been disclosed." Pl.'s Reply at 8-9.

 The Court is not persuaded by the plaintiff's waiver argument.  For starters, it is the plaintiff, not the agency, who carries the burden of producing at least some evidence that the deliberative process privilege has been waived.  See Rothschild v. Dep't of Energy, 6 F. Supp. 2d 38, 40-41, n.3 (D.D.C. 1998); cf. Davis v. DOJ, 968 F.2d 1276, 1279 (D.C. Cir. 1992) (noting, in an analogous context, that when a party claims that documents may not be withheld under FOIA because they are already in the "public domain," it is the "party who asserts that material is publicly available [that] carries the burden of production on that issue . . . because the task of proving the negative—that information has not been revealed—might require the government to undertake an exhaustive, potentially limitless search" (emphasis in original)). The plaintiff has not carried that burden here.  It instead offers only speculation that undisclosed information in email exchanges between the U.S. HLCG negotiators "likely represents the final position of the United States HLCG team that was ultimately communicated to the EU negotiators." Pl.'s Mem. at 14 (emphasis added); see also Pl.'s Reply at 8 ("[P]ortions of the withheld records likely contain information that has been disclosed to the EU." (emphasis added)).  Because there is no proof that specific "documents or information" withheld as privileged by the DOJ were voluntarily disclosed to "unnecessary third parties," and because

waivers of the deliberative process privilege "'should not be lightly inferred,'" In re Sealed Case, 121 F.3d at 741 (citation omitted), the plaintiff's contention must be rejected.

In support of its waiver argument, see Pl.'s Mem. at 12, the plaintiff relies on Center for International Environmental Law v. Office of the U.S. Trade Representative, 237 F. Supp. 2d 17, 30 (D.D.C. 2002), in which another member of this Court held that agency documents or portions thereof that were produced by or shared with a foreign government during treaty negotiations were not exempt from disclosure under FOIA Exemption 5. That holding, however, was not based on a finding that the agency waived the deliberative process privilege by disclosing information to a foreign government; rather, the court found that the documents did not qualify as "inter-agency or intra-agency memorandums or letters" under 5 U.S.C. § 552(b)(5) because it was undisputed that the documents in that case were exchanged with a foreign government. See id. That is not the case here. As previously noted, the DOJ's Vaughn submissions demonstrate that the documents currently under review were exchanged only within the Executive Branch. See Def.'s Mot., OIP Decl. ¶ 18; Def.'s Mot., Crim. Div. Decl. ¶¶ 16, 22, 28, 33, 38, 43, 48, 53, 58, 63. And insofar as the agency located documents "that were exchanged between the U.S. HLCG members and their E.U. counterparts," the "OIP has referred such material to the Departments of State and Homeland Security for processing and direct response to [the] plaintiff." Def.'s Mot., OIP Decl. ¶ 20. Thus, documents that were exchanged with the E.U. HLCG negotiators "are not currently under review by the Court," id., and the plaintiff's reliance on Center for International Environmental Law is misplaced.

### iii. The DOJ's Alleged Withholding of Purely Factual Information

"The deliberative process privilege does not . . . protect material that is purely factual, unless the material is so inextricably intertwined with the deliberative sections of documents that

its disclosure would inevitably reveal the government's deliberations," In re Sealed Case, 121

F.3d at 737 (emphasis added), or "it reflects an 'exercise of discretion and judgment calls,'"

Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 513 (D.C. Cir. 2011)

(quoting Mapother v. DOJ, 3 F.3d 1533, 1539 (D.C. Cir. 1993)).  For example, the privilege does

not shield "straightforward factual recounting[s] of . . . meeting[s]," which merely "detail[] what

each of the participants said," and "do not reflect the writer's analytical views regarding the

matters discussed."  Gold Anti-Trust Action Committee v. Bd. of Govs. of Fed. Reserve Sys.,

762 F. Supp. 2d 123, 137 (D.D.C. 2011) (internal quotation marks omitted and emphasis in

original); accord Nat'l Whistleblower Ctr. v. HHS, 849 F. Supp. 2d 13, 38-39 (D.D.C. 2012);

Williams & Connolly LLP v. SEC, 729 F. Supp. 2d 202, 213 (D.D.C. 2010).  It does, on the

other hand, protect "factual material . . . assembled through an exercise of judgment in extracting

pertinent material from a vast number of documents for the benefit of an official called upon to

take discretionary action."  Mapother, 3 F.3d at 1539; see Ancient Coin Collectors Guild, 641

F.3d at 513 (deeming protected under the deliberative process privilege "factual summaries

contained in [agency] reports [which] were culled by the [agency] from the much larger universe

of facts presented to it and reflect an exercise of judgment as to what issues are most relevant to

the pre-decisional findings and recommendations" (internal quotation marks omitted)).

The plaintiff asserts that the DOJ has improperly withheld "two types of factual material:

first, factual summaries of HLCG meetings or negotiations; and second, factual information

concerning positions taken by various E.U. HLCG negotiators."  Pl.'s Mem. at 16.  It points to

several documents and document descriptions in support of its position, see id. at 16-17, which

the Court will consider in turn.

### a. CRM-000460

CRM-000460 is an email chain between the United States HLCG negotiators.  The

redacted version of the document released to the plaintiff shows that Thomas Burrows wrote the

following message to Mary Lee Warren: "Can you give us a read out on where the HLCG stands

after the ministerial?  I think the whole HLCG would benefit from a paragraph on what

transpired and what the expectation of the [European Commission] is, and also the Swedish

Presidency."  Pl.'s Mem., Exhibit ("Ex.") C (CRM-000460).  The DOJ withheld most of Mary

Lee Warren's response to this question pursuant to Exemption 5, except for the following

statement: "I thought I already sent you this read-out Tom, but if not . . . [a] more complete

account of the whole [meeting] will be reported in an upcoming cable."  Id. (omission in

original).  Burrows then concluded the email exchange by responding "[t]hanks Mary Lee, I now

have a better understanding of where things stand."  Id.

When viewed in isolation, the redacted version of CRM-000460 might suggest that the

DOJ improperly withheld Mary Lee Warren's "straightforward factual recounting of a meeting."

Gold Anti-Trust Action Committee, 762 F. Supp. 2d at 137 (emphasis omitted).  However, the

description for CRM-000460 in the Criminal Division's Vaughn Index, which the plaintiff

largely ignores, undermines that inference:

> In this e-mail exchange, Thomas Burrows solicited information about the status of
> the HLCG deliberations following the ministerial troika meeting, for use in
> determining what DOJ would suggest be the next steps for the U.S. HLCG
> experts and their internal deliberations, as well as deliberations with the E.U.
> experts.  Mary Lee Warren responded, providing the information she thought was
> relevant and summarizing her views and reactions to the meeting.

Def.'s Mot., Crim. Div. Vaughn Index at 46 (emphasis added).  This description of CRM-000460

thus indicates that the withheld information contained facts that Mary Lee Warren "assembled

through an exercise of judgment" based on what she deemed "pertinent" from a larger set of

facts, and which she provided for the benefit of the United States HLCG experts' "discretionary

action[s]" in connection with the HLCG deliberations.  Mapother, 3 F.3d at 1539.  The withheld

material also contained Warren's own "views and reactions."  Such information reflects the

agencies' predecisional, deliberative process and is therefore privileged.

### b.  CRM-00757

The Criminal Division's Vaughn Index provides the following description of CRM-

00757:

> This is an internal DOJ e-mail in which Thomas Burrows expressed his opinion
> about the E.U.'s proposed position on the redress principle.  He shared this with
> Ms. Moncada to gauge her reaction before sending it to the other U.S. HLCG
> experts.  Mr. Burrows ultimately did not share his response with the other U.S.
> HLCG experts.

Def.'s Mot., Crim. Div. Vaughn Index at 42.  Although the plaintiff seemingly concedes that

Burrows's "opinion" is privileged, it contends that "the portion of the record describing the

'EU's proposed position on the redress principle' is factual and, as such, must be segregated and

released."  Pl.'s Mem. at 17.  According to the Criminal Division's declaration, however, "any

factual information in [this] message[] would reveal the author['s] decisions about which facts

were most relevant and most important to the discussions at hand," and  "no additional

information could be reasonably segregated and released without revealing the protected

deliberations."  Def.'s Mot., Crim. Div. Decl. ¶ 56.  The Court finds this assessment plausible,

given that the Vaughn Index's description of CRM-00757 states that Burrows relayed the E.U.'s

proposed position on the redress principle in the process of expressing his own, privileged

opinion on that principle.  See Ancient Coin Collectors Guild, 641 F.3d at 509 ("Uncontradicted,

plausible affidavits showing reasonable specificity and a logical relation to the [FOIA]

exemption are likely to prevail" at the summary judgment stage).  Accordingly, the Court finds

the plaintiff's challenge to the withholding of CRM-00757 unavailing.

### c.  TB 682-684

According to the OIP's <u>Vaughn</u> Index, TB-682-684 consist of "[t]hree e-mail messages

presenting opinions on a draft proposal from the EU."  Def.'s Mot., OIP <u>Vaughn</u> Index at 4.[6]

The plaintiff seeks only factual information concerning the "draft proposal from the EU," <u>see</u>

Pl.'s Mem. at 17 n.4, a request which assumes, of course, that the writers' opinions can be

extricated neatly from the parts of the document discussing the E.U.'s proposal.  The OIP

declaration states, however, that "this material contains extensive edits and comments from US

HLCG experts as they work to refine draft language and statements or share their candid

assessments of the implication for various draft language options under consideration in ongoing

negotiations," and that it "released all segregable nonexempt information."  Def.'s Mot., OIP

Decl. ¶ 15.  Because the DOJ's <u>Vaughn</u> submissions present a plausible and logical justification

for the agency's withholding of the entire document, the Court rejects the plaintiff's challenge to

this withholding.

### d.  CRM-000153-154

The Criminal Division's <u>Vaughn</u> Index describes CRM-000153-54 as follows:

> In this message, Mary Lee Warren summarized an "off-the-record" conversation
> she and Jackie Bednarz had with an EU official about the HLCG deliberations.
> This message reflects the information that Ms. Warren determined was most
> relevant for the U.S. HLCG experts <u>et al.</u> to know and the issues she concluded
> most required the U.S. HLCG experts' consideration as they worked to develop
> the U.S. position on issues remaining to be resolved by the HLCG.  It reflects Ms.

---

[6] Although the OIP's <u>Vaughn</u> Index indicates that TB-682-684 were "withheld on behalf of the Criminal Division,
and, accordingly, the justification for [the] withholding[] [will] be addressed by that component," Def.'s Mot., OIP
<u>Vaughn</u> Index at 1 n.2, 4, the Court has found no corresponding entry for the documents in the Criminal Division's
<u>Vaughn</u> Index.

>Warren's personal opinions about various topics, actions, and individuals.  Her purpose in sharing it was to inform the U.S. HLCG experts' internal deliberations in developing its negotiation position and strategy.

Def.'s Mot., Crim. Div. <u>Vaughn</u> Index at 44-45.  The plaintiff characterizes CRM-000153-154 as

merely summarizing a meeting with E.U. officials.  <u>See</u> Pl.'s Mem. at 17 n.4.  But that

characterization of CRM-000153-154 ignores key details in the document's <u>Vaughn</u> Index entry,

namely (1) that Warren's message reflected her "personal opinions about various topics, actions,

and individuals"; (2) that her factual summary of the "off-the-record" conversation contained

only the information she deemed relevant to the U.S. HLCG experts' deliberations, thus

indicating that she exercised judgment in assembling the pertinent facts; and (3) that she shared

the information to "inform the U.S. HLCG experts' internal deliberations" as they developed

"the U.S. position on issues remaining to be resolved by the HLCG."  Def.'s Mot., Crim. Div.

<u>Vaughn</u> Index at 45.  This document description suffices to show the predecisional and

deliberative nature of CRM-000153-54.

### e.  CRM-000612

CRM-000612 is a "portion of [an] internal DOJ e-mail exchange . . . [which] consists of

Mary Lee Warren's opinion about [the] status of the HLCG deliberations and her suggestion of a

way to address an issue she believed was impeding the group's work."  <u>Id.</u> at 41.  In challenging

the withholding of this document, the plaintiff emphasizes that "the document describes 'the

status of the HLCG deliberations,'" Pl.'s Mem. at 17 n.4, while omitting the crucial detail that it

concerns "Mary Lee  Warren's <u>opinion</u>" on that topic, Def.'s Mot., Crim. Div. <u>Vaughn</u> Index at

41 (emphasis added).  Moreover, the Criminal Division's declaration explains that CRM-000612

reflects agency officials' "subjective determinations about whether certain actions or

circumstances affected or impeded the work of the HLCG, and their suggestions about how to

address or resolve the issues/problems they identified and to keep the negotiations moving forward." Def.'s Mot., Crim. Div. Decl. ¶ 55. It adds that "[t]hese opinions and suggestions were shared with and discussed by U.S. Government employees as part of a process by which resolution to the particular issue/problem was reached, as well as the process by which final agreement on the common principles was achieved." Id. Because the DOJ's Vaughn submissions indicate that CRM-000612 contains Warren's subjective impressions and recommendations regarding the HLCG deliberations as well as her identification of a potential problem with respect to those deliberations, they adequately demonstrate that the document is protected by the deliberative process privilege.

### f. CRM-000786

CRM-000786 "is an internal DOJ e-mail in which Thomas Burrows described an issue preventing agreement on the principles and his opinion about how the U.S. should respond to it." Def.'s Mot., Crim. Div. Vaughn Index at 43. The plaintiff apparently believes that the document's description of an "issue preventing agreement on the principles" is unprivileged factual information, although it does not explain the basis for this position. See Pl.'s Mem. at 17 n.4. As just noted, however, the Criminal Division's declaration states that CRM-000786 is included within a category of documents containing agency officials' "subjective determinations about whether certain actions or circumstances affected or impeded the work of the HLCG, and their suggestions about how to address or resolve the issues/problems they identified and to keep the negotiations moving forward." Def.'s Mot., Crim. Div. Decl. ¶ 55. Thus, Burrows's identification of an "issue preventing agreement on the principles" by itself entailed a deliberative process, as determining what "actions or circumstances affected or impeded the work of the HLCG" required an exercise of agency judgment. Id.

In sum, the plaintiff's challenges to the foregoing withholdings all rest on the assumption that the documents contain factual information summarizing HLCG meetings and the negotiating positions of the E.U. that is readily segregable from the privileged parts of the documents.  The DOJ's Vaughn submissions, however, indicate that any factual material in these documents is privileged because it is either "inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations," In re Sealed Case, 121 F.3d at 737, or "reflects an 'exercise of discretion and judgment calls,'" Ancient Coin Collectors Guild, 641 F.3d at 513.  Because the agency's Vaughn submissions are "[u]ncontradicted, plausible," and show with "reasonable specificity . . . a logical relation to" the deliberative process privilege, id. at 509, the Court deems the submissions sufficient to carry the agency's burden at the summary judgment stage.

### iv.    Briefing Materials

The plaintiff next contends that the DOJ has improperly withheld, pursuant to the deliberative process privilege, "briefing materials" prepared for senior policy officials at the DOJ.  Pl.'s Mem. at 18.  Although not parsed by the plaintiff as such, its arguments attack both the purported predecisional and deliberative nature of the withheld briefing materials, which the Court will address separately.

### a.  Predecisional

Noting that "the HLCG was negotiated by [agency] experts" rather than the senior policy officials who received the briefing materials, the plaintiff contends that the "senior policy officials were not being called on to make decisions: the decisions had already been made and the briefing materials simply served as a means to keep senior officials apprised of the status and course of the negotiations."  Id. at 21.  While acknowledging that "the briefing materials may

reflect 'recommendations or suggestions,' on the way the HLCG negotiations should go forward," the plaintiff asserts that "those recommendations were not provided to assist the senior policy officials in making decisions.  Rather, the briefing materials reflect a factual description of the negotiations and the proposed course of action developed by the HLCG negotiators—a course of action given effect by the HLCG experts, not senior policy officials."  Id. at 22.  Thus, it maintains, the withheld briefing materials were not predecisional.  Id. at 20-21.

The plaintiff's arguments misapprehend the scope of the deliberative process at issue in this case and the role of the senior policy officials in that process.  To be sure, there is no dispute that "the actual [HLCG] negotiations were carried out by experts rather than by senior policy officials."  Def.'s Mot., OIA Decl. ¶ 4.  But senior policy officials within the U.S. government did participate in "various high-level meetings" with E.U. officials regarding the HLCG deliberations, Def.'s Mot., Crim. Div. Decl. ¶ 15, at which the officials "represent[ed] the interests of the [DOJ] as a whole," Def.'s Mot., OIP Decl. ¶ 16.  And senior policy officials (most notably for present purposes, the Attorney General) were ultimately responsible for formally adopting the principles at the October 28, 2009 Ministerial Troika.  Def.'s Mot., OIA Decl. ¶ 7.  Moreover, the broader context of the HLCG's mission was to establish non-binding principles regarding data protection that would set the stage for later negotiations on a binding international agreement, see Def.'s Mot., OIP Decl. ¶¶ 12, 7, and it was the "senior policy officials" who "decided at [the October 28, 2009 Ministerial Troika] that work should begin on a binding international agreement between the EU and US on the privacy and protection of personal data in the law enforcement context," Def.'s Mot., OIA Decl. ¶ 7; see also Def.'s Mot., Crim. Div. Decl. ¶ 13 (stating that decisions regarding "whether, where, and how to [begin] the process of reaching a binding international agreement with the E.U. on data protection in the law

enforcement context" was part of the DOJ's deliberative process).  The process of negotiating the binding international agreement is "still ongoing."  Def.'s Reply at 5.

The plaintiff takes a restrictive view of the "predecisional" requirement, one which would require the DOJ to pinpoint a decision of the senior policy officials to which the briefing materials contributed.  See, e.g., Pl.'s Mem. at 20 ("[I]t is difficult to ascertain the decision to which the briefing material contributed." (emphasis in original)).  The Circuit, however, long ago rejected such an interpretation of the deliberative process privilege.  See Access Reports v. DOJ, 926 F.2d 1192, 1196 (D.C. Cir. 1991) (holding that "the exemption does not 'turn[] on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared'" because "[a]ny requirement of a specific decision after the creation of the document would defeat the purpose of the exemption" (quoting Sears, 421 U.S. at 151 n.18) (emphasis in original)).  To satisfy the predecisional element, the agency need only "identify[] the decisionmaking process" to which the withheld documents contributed.  Id. (emphasis added).  The DOJ has done that here, as its Vaughn submissions explain that the withheld briefing materials were prepared for senior policy officials in anticipation of (1) various HLCG meetings where the officials represented the United States's interests in the HLCG deliberations, and (2) the October 28, 2009 Ministerial Troika, at which the officials formally accepted the HLCG principles and agreed to commence negotiations on a binding international agreement.

### b.  Deliberative

The plaintiff also asserts that there is nothing "deliberative" about the withheld briefing materials.  Pl.'s Mem. at 20.  But here again, the plaintiff's argument is belied by the DOJ's Vaughn submissions.  Take, for example, NL-231(b), which the OIP's Vaughn Index describes as:

> Briefing material prepared for an October 27, 2009 meeting with Beatrice Ask, Swedish Justice Minister[,] and Tobias Billström, Minister of Migration and Asylum Policy. This meeting is held in anticipation of the October 28, 2009 Ministerial [Troika] meeting. Factual background has been disclosed; withheld material summarizes [the] author's selection of and opinion on key points.

Def.'s Mot., OIP <u>Vaughn</u> Index at 9. According to the plaintiff, the information withheld from NL-231(b) reflects only "the HLCG experts' conclusions and summaries of the status of the HLCG negotiations," which, it claims, is not deliberative. Pl.'s Mem. at 20. Yet, insofar as the briefing material reflects the author's "opinion on key points," it is plainly deliberative. And regarding information revealing the author's "selection of . . . key points," the OIP's declaration cogently explains why this material is deliberative:

> In creating this briefing material, the drafters must determine the information, both factual and advisory that is necessary to provide senior officials so that they are succinctly apprised of the relevant background information, the pertinent issues, any anticipated questions and areas of concerns, and provided with appropriate talking points in a concise format. . . . When the author chooses certain facts among a wider universe, the selection of facts for inclusion is an exercise of judgment as to what is significant to the issue being discussed. To reveal those facts, would in turn expose the author's assessment of what he or she deemed significant in the course of preparing the Department's senior leadership for meetings, or in bringing leadership "up to speed" on matters that they may be questioned about, or might wish to weigh in on.

Def.'s Mot., OIP Decl. ¶ 16. Similarly, the plaintiff challenges the briefing materials withheld by the Criminal Division on the ground that they contain non-deliberative "summaries about the work and progress of the HLCG." Pl.'s Mem. at 20 (internal quotation marks omitted). According to the Criminal Division's declaration, however,

> the responsive portions [of the briefing materials] are a combination of: summaries about the work and progress of the HLCG by employees who <u>sifted through and compiled the information they deemed most pertinent</u>; candid assessments about issues affecting or impeding the progress of the deliberations and/or reaching of consensus on the common data protection principles; and suggestions about how the Attorney General, Deputy Attorney General, and/or [the Criminal Division's] Deputy Assistant Attorney General may address those issues with the E.U. during the meetings.

Def.'s Mot., Crim. Div. Decl. ¶ 15 (emphasis added).  Thus, while the plaintiff may be correct

that the briefing materials contain, among other things, summaries of the HLCG deliberations,

the DOJ's <u>Vaughn</u> submissions indicate that these summaries reveal the agency "employees'

deliberative process of selecting and presenting facts," which required them to "exercise[] their

judgment by anticipating what information these officials would need in order to be prepared to

address any questions or issues regarding  the work of the U.S.'s commitment to the HLCG."  <u>Id.</u>

¶ 18.  Because such material qualifies as deliberative, the plaintiff's challenge is meritless.

**B.     Segregability**

        Under the FOIA, "[a]ny reasonably segregable portion of a record shall be provided to

any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. §

552(b).  "It has long been a rule in this Circuit that non-exempt portions of a document must be

disclosed unless they are inextricably intertwined with exempt portions."  <u>Mead Data Cent., Inc.</u>

<u>v. U.S. Dep't of Air Force</u>, 566 F.2d 242, 260 (D.C. Cir. 1977).  So important is this requirement

that "[b]efore approving the application of a FOIA exemption, the district court <u>must</u> make

specific findings of segregability regarding the documents to be withheld."  <u>Sussman v. U.S.</u>

<u>Marshals Serv.</u>, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (emphasis added and citations omitted).

The DOJ bears the burden of showing that no such segregable information exists, <u>Army Times</u>

<u>Pub'lg Co. v. Dep't of Air Force</u>, 998 F.2d 1067, 1071 (D.C. Cir. 1993), and "must provide a

'detailed justification' for its non-segregability," <u>Johnson v. Exec. Office for U.S. Attorneys</u>, 310

F.3d 771, 776 (D.C. Cir. 2002) (quoting <u>Mead</u>, 566 F.2d at 261).

        The Court previously discussed the DOJ's segregability efforts at length in its November

30, 2011 Memorandum Opinion.  <u>See</u> <u>Elec. Frontier Found.</u>, 826 F. Supp. 2d at 173-74.

Although the Court generally approved of the DOJ's segregability analysis, it instructed the

agency to "provide a more comprehensive description as to the various documents <u>withheld in</u>

<u>full</u>," identifying "'what proportion of the information in [the] document[s],' if any, 'is non-

exempt and how that material is dispersed throughout the document[s].'" <u>Id.</u> at 174 (quoting

<u>Mead Data Cent.</u>, 566 F.2d at 261) (emphasis added).

Consistent with the Court's instructions, the DOJ's revised <u>Vaughn</u> submissions better

explain the basis for the agency's withholdings of documents in full.  Namely, the OIP's

declaration states that the records it withheld in full consist of (1) draft documents of which the

plaintiff has been provided final versions and thus no longer challenges; (2) 55 pages of briefing

material that the OIP determined contain no segregable information; (3) a 21-page document,

NLI-30(a), consisting of "'snippets of proposed text' that Mary Lee Warren is providing to

Thomas Burrows for his review . . . in preparation for the October 1, 2009 redress [principle]

workshop"; and (4) a group of documents "comprised of twelve sets of handwritten notes from

US HLCG experts Kirsten Moncada and Nancy Libin," containing "the authors' evaluations and

contemporaneous thoughts on internal US discussions regarding HLCG deliberations and

negotiations, contextual revisions regarding the draft redress principle, proposed meeting

agendas, and other logistics created either in anticipation or aftermath of meetings, as well as

notes to self and questions for follow-up." <u>See</u> Def.'s Mot., OIP Decl. ¶¶ 21-24.  Insofar as these

documents contained factual information, the OIP concluded that "it was inextricably intertwined

with the privileged deliberative information, or could not be segregated and released without

revealing the Government's deliberations." <u>Id.</u> ¶ 22.  As for the Criminal Division, it conducted

a renewed segregability review for each of its withholdings, and concluded that most of the

documents withheld in full contained no "purely factual," segregable information, and that non-

exempt information in some documents consisted only of stray phrases with no meaningful

informational content.  See Def.'s Mot., Crim. Div. Decl. ¶¶ 20, 25, 31, 36, 41, 51, 56, 61, 66.  In some instances, however, the Criminal Division's re-review uncovered non-exempt and segregable portions of documents previously withheld in full, and it accordingly released that information to the plaintiff.  E.g., id. ¶ 61.

Upon review of the DOJ's revised Vaughn submissions, and consistent with the Court's rulings above rejecting the plaintiff's arguments that the DOJ has improperly withheld purely factual information, the Court concludes that the DOJ has generally carried its burden of showing the non-segregability of its withholdings—save for one exception: a document withheld in full by the OIP labeled OIPGEB-1.  According to the OIP's Vaughn Index, OIPGEB-1 consists of 48 pages of "[b]riefing material prepared for the Attorney General in preparation of the October 28, 2009 Ministerial Troika."  Def.'s Mot., OIP Vaughn Index at 12.  Despite the Court's prior directive that the agency provide further explanation for documents withheld in full, the OIP's declaration does not give a detailed justification for why there was no segregable information in this particular document.  Given the length of the document, there is the possibility that it contains at least some segregable information.  The OIP must therefore better explain its segregability efforts regarding this document.  Thus, the Court will defer granting DOJ partial summary judgment as to the segregability of OIPGEB-1.

## IV.  CONCLUSION

The Court has carefully considered the DOJ's Vaughn submissions and the plaintiff's challenges to the agency's withholdings.  Based on this review, the Court finds that partial summary judgment in the DOJ's favor is warranted as to the documents currently under review

by the Court,[7] because the DOJ's Vaughn submissions "describe the justifications for

nondisclosure with reasonably specific detail, demonstrate that the information withheld

logically falls within the claimed exemption, and are not controverted by either contrary

evidence in the record nor by evidence of agency bad faith."  Larson, 565 F.3d at 862 (citations

omitted).  The Court further finds that the DOJ has adequately shown the non-segregability of all

of its withholdings, with the exception of OIPGEB-1.   Accordingly, the DOJ's renewed motion

for partial summary judgment is granted in part and denied in part without prejudice, and the

plaintiff's renewed cross-motion for partial summary judgment is denied.

   **SO ORDERED** this 10th day of September, 2012.[8]


         REGGIE B. WALTON
         United States District Judge

---

[7] As previously noted, the DOJ has referred documents that may have been shared with E.U. officials to the DHS and State Department for direct processing, and those documents consequently are not under review by the Court at this time.

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.